BEN GAMBLE, Plaintiff in Error,

*v.*

STATE, Defendant in Error.

(*Nashville*, December Term, 1959.)

Opinion filed March 11, 1960.

E. A. LANGFORD and ELMER DEAN LANGFORD, Cookeville, for plaintiff in error.

WILLIAM D. GRUGETT, Assistant Attorney General, for the State.

MR. JUSTICE SWEPSTON delivered the opinion of the Court.

Plaintiff in error Ben Gamble hereinafter called the defendant, was convicted of violating Ch. 339, Private

Acts of 1909, and fined $50. He has appealed and assigned 13 alleged errors.

The issues the Court is requested to determine are (1) the constitutionality of said Private Act; (2) whether or not the indictment charges an offense; (3) whether or not the resolutions providing rules and regulations for compulsory immunization of school children passed by the Davidson County Board of Health are constitutional and binding against the defendant and upon which he can properly be held under the indictment; (4) whether or not there is sufficient evidence upon which to predicate a verdict of guilty against the defendant; (5) whether or not defendant had notice; and (6) whether or not the court erred in admitting certain evidence.

We adopt substantially the statement of facts in the brief of the State which we consider to be fair. In 1909 the Legislature of the State of Tennessee passed a Private Act creating and establishing a Board of Health for Davidson County and under Section 7 of this Act the Board of Health was empowered to make such rules and regulations as they should deem necessary and proper for the protection of public health. In accordance with this provision, the Board of Health in March, 1932, adopted certain regulations requiring immunization against certain diseases and in April, 1957, readopted and amended same to include poliomyelitis. Pursuant to these regulations the County Health Officer, Dr. John Lentz, instituted certain procedures designed to carry out the purposes of the regulations.

In January, 1959, the Public Health Nurse, Mrs. Stella Crawford, who was in charge of the Goodlettsville school, in making a record of the children who required immuni-

zations, found that Arthur Ray and Elizabeth Gamble, children of the defendant, needed immunization for polio. It is established that on two occasions she caused the forms, notifying the parents of such need, to be taken home by the children who gave the forms to their mother but the forms were not returned to the school as they were supposed to have been. The evidence is that Mrs. Gamble received these forms and told her husband that she had received these papers, although she implies that she did not tell him the contents. However, the record is clear from a statement made after the indictment to a newspaper reporter by the defendant that he knew of the notice but had refused to have his children immunized for polio.

An attack is made on the constitutionality of said Act on several grounds, not all of which need be noticed, as defendant is not in a position to be entitled to raise the question in certain aspects.

The first ground of attack is that it violates Art. II, Sec. 17, of the Constitution in that part providing ''No bill shall become a law which embraces more than one subject, that subject to be expressed in the title.''

The title or caption of the Act is as follows:

''An Act to create and establish a Board of Health for Davidson County, Tenn., for the better protection of the public health; and to provide for the election, term of office, and also the removal of members thereof; and to prescribe their powers, duties, qualifications, and compensation; and to provide penalties for the violation of this Act.''

The first 5 sections provide for the creation of a Board of Health for Davidson County, for annual election, terms of members, eligibility, vacancies and organization.

Sec. 6 provides:

"That the Health Officer of said county shall be the Secretary of the said County Board of Health."

Sec. 7 provides:

"That said County Board of Health shall have general supervision of the health matters in the said county, and shall institute such measures and regulations as they may deem necessary for the protection of the public health. The said County Board of Health shall report to the State Board of Health on or before the 5th day of each month, and at other times when requested by the State Board of Health, the condition of the public health in said county, and to carry into effect such regulations as the State Board of Health may prescribe for the prevention and suppression of diseases and the promotion of the public health."

Sec. 8 provides that the Board shall determine the necessary number of Sanitary Inspectors and other employees, whose compensation shall be *fixed by the County Court,* and shall prescribe the rules and regulations for the County Health Officer and other employees.

Sec. 9 provides for the meetings of the County Board of Health and compensation in the amount of $5 for each meeting, not more than one meeting to be held in any one month.

382

Sec. 10 provides:

"That the compensation of the members of the said County Board of Health and the salaries or compensation of the Sanitary Inspectors and other appointees or employees of said County Board of Health, and the necessary expenses incident to preventing and redistricting [restricting] disease, as well as for the general safeguarding of the public health,"

be made a county obligation and the County Court shall order the payment of all such out of the county funds.

Sec. 11 provides that the County Health Officer shall have the right to employ and discharge the Inspectors and other employees subject to the approval of the Board of Health and shall have general supervision of same.

Sec. 12 provides that the County Court shall have the power of removal of any member of the County Board of Health for conduct unbecoming a public official, or for inefficiency, or for neglect of duty.

Sec. 13 provides against nepotism and against contracting with themselves or with relatives.

Sec. 14 provides for the abatement of nuisances and Sec. 15 provides:

"That any person who shall violate any rule or regulation of the County Board of Health which has for its object the prevention or restriction of disease, or the promotion of the public health, or shall fail to abate a nuisance within the time specified after written notice is served, shall be guilty of a misdemeanor, and, upon conviction thereof, shall be fined not less than $5 nor more than $100, or confined in the county jail of said county for not less than one month nor more than

six months, or both such fine and imprisonment, in the discretion of the court."

■ From the foregoing abstract of the Act, it seems obvious that everything dealt with in the body of the Act is germane to the matter stated in the caption, i. e., a bill to create and establish a County Board of Health, etc. *Hicks v. Rhea County,* 189 Tenn. 383, 225 S.W.2d 544; *Elliott v. Fuqua,* 185 Tenn. 200, 204 S.W.2d 1016; *Caldwell v. Harris,* 185 Tenn. 209, 204 S.W.2d 1019; *Mensi v. Walker,* 160 Tenn. 468, 26 S.W.2d 132; *House v. Creveling,* 147 Tenn. 589, 250 S.W. 357.

The assignment is overruled.

Next, it is alleged that the Act violates Art. II, Secs. 2 and 3, which are respectively as follows:

"Sec. 2. No person or persons belonging to one of these departments shall exercise any of the powers properly belonging to either of the others, except in the cases herein directed or permitted."

"Sec. 3. The Legislative authority of this State shall be vested in a General Assembly, which shall consist of a Senate and House of Representatives, both dependent on the people; who shall hold their offices for two years from the day of the general election."

■ Under this assignment it is said that the Act attempts to delegate legislative power and authority to the Board of Health and without necessary limitations and restrictions, especially Secs. 7 and 15.

In 25 Am.Jur., under Health, p. 288, Sec. 5, it is said:

"Sec. 5. *Of Boards of Health and Other Administrative Authorities.*—The state usually invests boards

of health with the power to adopt ordinances, bylaws, rules, and regulations necessary to secure the objects of their organization. Generally, the authority of boards of health or other bodies designated to act as boards of health is prescribed by general enactments of the legislature or by municipal charters. The power granted to administrative boards of the nature of boards of health to adopt rules, bylaws, and regulations reasonably adapted to carry out the purpose or object for which they are created is generally held not to be a delegation of legislative authority in violation of the usual constitutional prohibition. For the protection of the health of the community, the most extensive powers may be conferred on such boards whether state or local. * * *"

Under Note 20 supporting the first sentence in this paragraph is cited *State v. Martin & Lipe,* 134 Ark. 420, 204 S.W. 622. This case was quite similar to the instant one in that it was a prosecution for a violation of the regulation of the State Board of Health requiring a certificate for the smallpox vaccination as a prerequisite to an attendance at school. The rule was upheld and the Court said that every presumption is to be indulged in favor of the necessity of such rule and the Courts will not interfere with the acts of the health authorities unless it is apparent that a rule is arbitrary.

In *Board of Health of Covington v. Kollman,* 156 Ky. 351, 160 S.W. 1052, 49 L.R.A., N.S., 354, there was involved a local board of health regulation requiring that all milk dealers selling milk in quantities less than a gallon should use only transparent glass bottles or other similar receptacles approved by the Board. This ordinance was upheld and it was said that the authorities

were not confined to preventing the spread of epidemic diseases but were authorized to adopt a resolution preventing the outbreak of same.

We think this is a complete statute in itself. That is, the statute creates a County Board of Health and provides in effect that the health is to be safeguarded by the passage of rules deemed by said Board of Health suitable for conserving the public health and by enforcing the rules and regulations for the State Board of Health. These are regulations that fall under the police powers and wide discretion may be given such Boards. It is not always feasible for the Legislature to know just what detailed provisions and requirements should be made, especially when emergencies arise. A very interesting case is that of *State ex rel. Anderson v. Fadely*, 180 Kan. 652, 308 P.2d 537, 548. The State created an emergency fund and set up a finance council to administer the same and made appropriations to be allocated according to conditions and limitations prescribed. The duties imposed upon the finance council were administrative in character, i. e., to ascertain the facts and conditions upon which the statutes were declared to operate and accordingly to allocate funds for the purposes specified. The relevant specification here was "the 'preservation of the public health and protection of persons and property from extraordinary conditions arising after, or which were not foreseen at the time, appropriations were made by the preceding regular legislative session.' "

The Court said:

"Although subsection (1) establishes no criterion as to what shall constitute preservation of the public health, or what findings shall be made to achieve this

beneficial result, or how or in what manner persons or property shall be protected, or what shall constitute 'extraordinary conditions,' it is evident that the legislature exercised the police power of the state in determining its policy that the public health and safety of persons and property should be preserved and protected from extraordinary conditions and deemed it impracticable, if not impossible, to define, with preciseness, fixed measures in advance by which this result could be accomplished. The term 'public health' is not susceptible to accurate definition since it takes on new definitions when new conditions arise, but, generally speaking, it means the wholesome sanitary condition of the community at large. 39 C.J.S. Health sec. 1, p. 811. Among all the objects sought to be secured by government, none is more important than the preservation of the public health; and, an imperative obligation rests upon the state through its proper instrumentalities or agencies to take all necessary steps to accomplish this objective (25 Am.Jur., Health, p. 287, sec. 3). Statutes enacted for this purpose should be liberally construed and the most extensive power may be conferred on administrative boards, either state or local, to carry out such purpose. 39 C.J.S. Health sec. 2, pp. 811, 813. The guide set forth in subsection (1) is the preservation of the public health and the protection of persons and property from extraordinary conditions. Because of varied facts which might affect this policy, the legislature wisely did not undertake to enumerate them, but required them to be ascertained and applied by the finance council. We see nothing seriously wrong with this provision. A statute which confers discretion on an

executive officer or board without establishing any standards is a delegation of legislative power and is unconstitutional; but, when the discretion to be exercised relates to a police regulation for the protection of the public morals, health, safety or general welfare, and it is impossible or impracticable to provide such standards, and to do so would defeat the legislative objective sought to be accomplished, legislation conferring such discretion may be valid and constitutional without such restrictions and limitations. (Citing authorities.)''

The oft quoted rule found in several of our cases in Tennessee is that the difference between the power to pass the law and the power to adopt rules and regulations to carry it into effect was long ago stated in these words:

''The legislature cannot delegate its power to make a law, but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend.'' *Leeper v. State*, 103 Tenn. 500, 526, 53 S.W. 962, 967, 48 L.R.A. 167.

Then we have the latest review of the authorities in this State set out in the case of *Department of Public Welfare v. National Help ''U'' Ass'n*, 197 Tenn. 8, 13, 270 S.W.2d 337; and the same need not be repeated here.

It is interesting to note also in *House v. Creveling,* supra, wherein this Court was dealing with Art. II, Sec. 17 of the Constitution, but in this attack on the State Reorganization Act it was urged the body of the Act was broader than the caption because it is said to regulate matters of a judicial and legislative nature. On page 597 of 147 Tenn., on page 359 of 250 S.W. in response to

this Mr. Justice Green referred to the case of *Richardson v. Young,* 122 Tenn. 471, 125 S.W. 664, in which it was shown that as a matter of practice it has been found impossible to entirely preserve the theoretical lines between the three departments of government; it was further said:

"We know, too, that the power to make rules is commonly given to boards and commissions, 12 C.J. 847; *Woods v. State,* supra [130 Tenn. 100, 169 S.W. 558, L.R.A.1915F, 531]. These rules have the force of statutes, and their formulation is really the exercise of a legislative power."

This assignment is accordingly overruled.

The rest of assignment 1 consists of 13 complaints, some overlapping, against the validity of the indictment, the rules and regulations, the lack of notice to the plaintiff in error, the lack of legal authority of the Board to require defendant to take his children to the family physician for vaccination, the alleged violation of defendant's constitutional rights under Art. I, Secs. 3 and 9, the failure to allege in the indictment that the Board of Health offered to furnish the necessary vaccine, etc., or to charge that the defendant knew that the Board of Health was ready at all times to furnish same, etc.

We have examined each one of these complaints and we do not find any merit in same. However, we set out here the pertinent part of the indictment and the relevant part of the regulations in order to show the lack of merit in these numerous complaints.

The resolutions adopted by the County Board of Health, after providing for immunization as a condition

precedent to the right to attend school, provides for a survey to ascertain those who need immunization and for notice to the parents of the children. Sec. 3 provides:

"* * * That when and if said parent shall fail or refuse to take his or her child to his or her family physician for the immunization procedure within the time designated by said County Health Officer, then he or she shall be notified that unless a written opinion be furnished the County Health Officer from another physician that it would not be prudent on account of sickness or other cause to administer the prophylactic treatment, then the County Health Officer shall proceed to enforce the provisions of this resolution."

Sec. 4 provides for payment by the Health Officer of the expense of service and immunization of those who cannot afford such expense.

The indictment, after naming the defendant, the date of the offense and his two children and their school and examination of the students by the Board of Health proceeds as follows:

"And having been duly advised and instructed by said Board of Health to have said children immunized against paralytic polio, and the County Board of Health at all times being ready to furnish the necessary vaccine and/or serum and to perform the necessary immunization service, unlawfully and wilfully did fail or refuse to take his said children to his family physician for immunization procedure within the time designated by the County Health Officer in violation of Ch. 339, Private Acts of the General Assembly of the State of Tennessee for the year 1909, and health regu-

lations duly enacted under the provisions of said law, * *.''

■ We think this indictment is sufficient under T.C.A. sec. 40-1802 and we call attention to the statement in *Jordan v. State,* 156 Tenn. 509, 513, 3 S.W.2d 159, 160, wherein it is said:

"(6) The degree of precision in the description of an offense cannot be given in an indictment, so as to distinguish it *per se* from all other cases of a similar nature. Such discrimination amounting to identification must rest in averment by plea and in the proof, and its absence in description in the indictment can be no test of the certainty required either for defense against the present prosecution or for protection against a future prosecution for the same matter. *State v. Pearce,* supra [7 Tenn. 66]; *State v. Cameron,* 50 Tenn. [78], 86; *Millner v. State,* 83 Tenn. [179], 181; *State v. Stephen,* 127 Tenn. [282], 285 [154 S.W. 1149]."

We accordingly overrule all of assignment 1.

The other 12 assignments complain of various matters, such as no evidence to support the verdict, lack of adequate notice to the defendant, insufficiency of averment in the indictment, the admission in evidence of the minutes and resolutions of the Board of Health above referred to, and the admission in evidence of the testimony of the supervising nurse and of the school teachers as to the manner in which the records of immunization or lack of same was kept, and how the notices were prepared and sent to the parents.

■ We deem it unnecessary to extend this opinion further for the reason that some of these complaints have already been covered by what has heretofore been said; there is ample evidence to support the conviction because it is perfectly clear that the jury was warranted in finding that this defendant did have actual notice of the requirement that his children be vaccinated and that he refused to have same done, so that it is unnecessary to discuss the admissibility of the testimony of the teachers with regard to the procedure followed by them.

We shall add, however, for the benefit of counsel for defendant the following.

■■ We think defendant is not in a position to attack Sections 14 and 15 of the statute relating to abatement of a nuisance and punishment for same. He is not charged with maintaining or creating a nuisance; these provisions, even if they were unconstitutional, are so independent of the other parts of the act that their elision would leave a complete act. *Fite v. State ex rel. Snider,* 114 Tenn. 646, 659, 88 S.W. 941, 1 L.R.A.,N.S., 520; *Davidson County v. Elrod,* 191 Tenn. 109, 232 S.W.2d 1.

■ Moreover, we think there is no delegation of judicial power.

Sec. 14 ends with the words:

"Whenever said notice is not complied with * * *, the County Health Officer shall take the proper steps to enforce same and to abate such nuisance."

That means of course a court proceeding. Section 15 refers to the criminal aspect and expressly mentions a court proceeding.

Finally, we are unable to see the relevancy of *Mayor & Aldermen of Town of Gallatin v. Sumner County*, 152 Tenn. 518, 279 S.W. 387. Quite naturally the county could not be saddled with an expense of paving the public municipal square under a caption of an act that made no mention of same, in any event. But we have no such situation here. It is interesting to note that the caption of the original Act of 1885, Ch. 95, is:

"An Act to be entitled An Act to authorize the several counties in this State to adopt more efficient measures for promoting the public health."

The body of the Act provided for the payment of the expenses of the Board of Health to be paid by the county. Such is still the law and no such attack has ever been made on same.

All assignments are overruled and the judgment below is affirmed.