ALASKA ALCOHOLIC BEVERAGE CONTROL BOARD, Appellant,

v.

MALCOLM, INC., d/b/a Guys & Dolls, Appellee.

No. 363.

Supreme Court of Alaska.

April 21, 1964.

---

**442**

Robert C. Erwin, Dist. Atty., and Dorothy Awes Haaland, Asst. Dist. Atty., Anchorage, for appellant.

Wendell P. Kay, of Kay & Miller, Anchorage, for appellee.

Before NESBETT, C. J., and DIMOND and AREND, JJ.

AREND, Justice.

In this action the attorney general filed a "Statement of Issues" with the Alcoholic Liquor Control Board of Alaska (hereinafter referred to as the Board), protesting the reissuance for 1960 of a beverage dispensary liquor license [1] to the appellee, Malcolm, Inc., for its liquor dispensary business in Anchorage, known as Guys & Dolls. The statement of issues alleged (1) that the appellee on July 24, 1959, employed three female persons on a compensatory basis to solicit, entice and encourage patrons to purchase alcoholic beverages sold on the premises; and (2) that employment of the female persons for the purposes mentioned was in violation of Alaska law.

The hearing officer, who heard the matter, [2] found the facts to be as alleged by the state and sent to the Board his proposed decision that the application of Malcolm, Inc., for renewal of its license for 1960 be denied. This proposed decision was adopted by the Board. The superior court granted the appellee an appeal and, after hearing the matter on the record, ordered the Board to reissue and renew the license.

In a memorandum opinion accompanying its order, the superior court held (1) that the burden of proof with regard to offenses alleged to have been committed by the appellee rested upon the Board; (2) that the Board must renew a liquor license, except where the licensee has been convicted of a liquor law violation, and that, in the event of such a violation, the Board may exercise its discretion as to whether or not to reissue the license; and (3) that, since there was no proof of conviction of violation of the liquor laws in this case, the Board exceeded its authority in refusing to reissue the license. On appeal to this court the state contends that all three of these holdings or findings of the trial court were in error.

The law, which the appellee is alleged by the state to have violated, is to be found in SLA 1959, chapter 80 [AS 04.15.090(a)]. This law, which is referred to in common parlance as the B-girl statute, reads as follows:

"Section 1. No female person shall be employed by any liquor or beverage dispensary, club, road house, restaurant, or common carrier dispensary license issued under the laws of the

---

1. A beverage dispensary license gives the holder the right to sell for cash or serve on the premises beer, wine and hard liquor for consumption on the premises only. Section 35–4–21(A) as amended, now AS 04.10.040.

2. The Administrative Procedure Act of Alaska authorizes the Governor to assign hearing officers to conduct hearings pursuant to the act. A hearing officer is required to preside over every contested case. The particular agency concerned determines whether the hearing officer is to hear the case alone or whether the agency itself is to hear the case with the hearing officer. SLA 1959, ch. 143, art. VII, §§ 3, 13(1) [AS 44.62.350, 44.62.450(a)].

State of Alaska, to solicit, entice or encourage the purchase by patrons of any such licensed premises of alcoholic beverages upon a rebate, percentage, or share the profit basis, or any other basis; nor shall any such female person receive any salary or other compensation from any person for the solicitation, enticement, or encouragement of the purchase of alcoholic beverages as hereinabove set forth. Bona fide entertainers, hat check girls and female employees not directly or principally employed to solicit sales of intoxicants shall be exempt herefrom.

"Sec. 2. Any female person or the holder or operator of any liquor dispensary, club, restaurant, or common carrier dispensary license violating the provisions of this Act shall be guilty of a misdemeanor and shall be punished by a fine of not less than $300.00 or more than $1,000.00, or by imprisonment for not more than sixty days, or by both such fine and imprisonment."

Before taking up the legal issues involved, we give the following summary of the evidence presented before the hearing officer: On July 24, 1959, Jack Malcolm was the operator for the appellee of the licensed premises, Guys & Dolls—a nightclub where liquor but no food was served and seven girls were employed as exotic dancers, that is, stripteasers, to entertain the customers. The girls signed form contracts[3] covering the general purpose of the employment, but the terms of employment and salary were left blank. It appears that the contracts could be terminated at the will of either party and that they were made up so that there would be legal instruments showing that the girls were bona fide entertainers.

The seven girls, inclusive of the three named in the statement of issues, were employed to do three shows a night, six days a week. The appearance of each girl in each show lasted for eight to ten minutes, and it required about twenty minutes to change into costume and then back into street clothes. The girls had an eight-hour shift. They came to the Guys & Dolls at about nine o'clock in the evening and stayed until six o'clock the following morning. Once a girl reported for work she could not leave the premises until her shift was completed. Between their dance appearances the girls were free to and did solicit drinks from the customers for which they received a commission in addition to a weekly salary of approximately $125. Taxes were withheld by the employer on the gross earnings of salary and commissions. Champagne was priced at $2 per glass and at $20 and $40 by the bottle. Other regular bar drinks sold for less. The solicitor received a commission of fifty percent on each sale she induced.

At the Guys & Dolls there was an area separated by a curtain, with booths, known as the "Blue Room" to which a girl could take the customer to drink champagne and converse in privacy and on a more intimate basis.

Two police officers testified that they went separately into the Guys & Dolls shortly after one o'clock on the morning of July 24, 1959, as part of an investigation of B-girl[4] establishments. Each testified that he took a seat at the bar and was soon approached by a girl and asked to buy liquor by the glass or by the bottle. As her turn came, each girl left to do her strip dance. One of the officers stated that he spent about one hour at the Guys & Dolls, all in the company of one girl except for the thirty minutes she had to give to her part in the show. He enjoyed the girl's dance and found it entertaining. The other officer

---

3. The contracts of employment do not appear in the record sent up.

4. Webster's Third New International Dictionary—Unabridged (1961), at page 210, defines "b-girl" as a woman employed frequently on a commission basis to entertain and listen to bar patrons and encourage them to spend freely.

stated that one of the girls who solicited him for drinks took him to the back of the room and told him that if he would buy a bottle of champagne she would be allowed to sit out with him her turn on the stage. Jack Malcolm testified that the girl's statement was not the truth. The trial court took judicial notice of the fact that the appellee, Malcolm, Inc., had not been convicted of any violation of the liquor laws or regulations.

■ Turning first to the state's contention that the superior court erred in holding that the Board had the burden of proof with regard to offenses claimed to have been committed by the appellee, we are of the opinion that in the instant case that burden was upon the state. The state was the complainant against the reissuance of the license and had asserted affirmatively in its statement of issues that the license should not be renewed because the licensee had violated chapter 80 of SLA 1959. That was the issue raised by the state's pleading and upon the state fell the burden of proving the affirmative of that issue.[5]

While the Alaska Administrative Procedure Act,[6] which applies to proceedings before the Alcoholic Liquor Control Board,[7] does not specifically state who has the burden of proof in administrative adjudications, it does provide that

"Nothing herein shall be construed to alter the ordinary rules of burden of proof of judicial proceedings in Alaska."[8]

The foregoing provision coupled with the fact that under the Administrative Procedure Act a hearing to determine whether a license should be granted, issued or renewed shall be initiated by filing a "statement of issues" which must be served upon the person seeking the issuance or renewal of the license *as the respondent,*[9] and against which the respondent may defend by filing a notice of defense,[10] impels us to the conclusion that the burden of proof on the issue raised by the statement of issues was upon the state.[11] So, while technically the burden of proof was on the state instead of the Board, the state cannot be heard to complain for the net result of the lower court's ruling was that the burden of proof on the matter under consideration did not fall upon the licensee, Malcolm, Inc. In so holding, the court was correct.

■ The next question to be decided grows out of the trial court's ruling that the Board must renew a liquor license, except where the licensee has been convicted of a liquor law violation. The question is

5. Steen v. City of Los Angeles, 31 Cal.2d 542, 190 P.2d 937, 940 (1948); Goodyear Synthetic Rubber Corp. v. Department of Industrial Relations, Ohio Com. Pl., 122 N.E.2d 503, 508–510 (1954).

6. SLA 1959, ch. 143 [AS 44.62.010–44.-62.650].

7. SLA 1959, ch. 143, subch. 2, § 2(1) [AS 44.62.330(a)].

8. SLA 1959, ch. 143, subch. 2, § 14(4) [AS 44.62.460(e)].

9. SLA 1959, ch. 143, subch. 2, §§ 5, 6 [AS 44.62.370, 380].

10. SLA 1959, ch. 143, subch. 2, § 7 [AS 44.62.390].

11. See Lyons v. Delaware Liquor Comm'n, 5 Terry 304, 44 Del. 304, 58 A.2d 889, 892 (1948); Bernstein v. Real Estate Comm'n of Maryland, 221 Md. 221, 156

A.2d 657, 662 (1959), appeal dismissed 363 U.S. 419, 80 S.Ct. 1257, 4 L.Ed.2d 1515 (1960). From the latter case we quote the following pertinent remarks:

"Ordinarily it is true, of course, that when the bona fides of a *formal* contract is attacked for the purpose of having it canceled or modified, the burden to show that it was not made in good faith is upon those who attack it. [Citing case.] It is also true, as it is in court proceedings, that the burden of proof is generally on the party asserting the affirmative of an issue before an administrative body. 42 Am.Jur., Public Administrative Law, § 131. Thus, in this case, there is no doubt that the complaining property owners had the burden throughout of proving the alleged violations of the prohibitory provisions of the real estate 'code.' 2 Davis, Administrative Law, § 14.14 (1958). * * *" [Emphasis in the original.]

this: May not the Board, under circumstances such as exist in the instant case, exercise its discretion and refuse to reissue the license even though there has been no conviction of a statutory violation? We think that it may.

That the Board has discretion in the matter of reissuing liquor licenses is evidenced by subdivisions (A) and (B) of section 35–4–3, ACLA Cum.Supp.1959 [AS 04.05.030(a) and (b)] which read:

"(A) The Board is to have full power, authority and control over the manufacture, barter, sale, and possession of intoxicating liquors in the State of Alaska, as provided herein.

"(B) The Board shall review all applications made under this Act [§§ 35–4–1—35–4–6, 35–4–11—35–4–23 herein] for licenses and shall cause to be issued, reissued, revoked, transferred or suspended all licenses coming within the purview of this Act. *Such licenses shall be issued, reissued, revoked, transferred or suspended as the Board deems in the best interests of the public;* provided, however, that the denial of any license be made in writing with the reason therefor set forth."
[Emphasis supplied.]

and also by section 35–4–22(C), ACLA Cum.Supp.1959 [AS 04.10.350] wherein it is stated that

"Upon application a license *may* be reissued each year, prior to the termination of the existing license, upon payment of the applicable fees, save and except in case of a conviction as provided in Section 35–4–20 hereof. [Emphasis added.]

"Each such application for a reissuance of license shall contain all of the information required of a new license, except that there shall be no proof of posting required. Each such application for reissuance shall further contain a statement of convictions of the applicant of Federal or State law or regulation covering the sale of intoxicating liquors during the term of the preceding license. No license shall be reissued which has not been exercised or active at least thirty days during the preceding year.

The appellee argues that section 35–4–22 (C) limits the Board's discretion so that it must reissue a license except in cases where the licensee has been convicted as provided in section 35–4–20.[12] The appellee then points out that the exception stated in section 35–4–22(C) does not even include convictions under the B-girl statute (SLA 1959, ch. 80) as an impediment to the privilege of license renewal and urges that the Board, therefore, had no legal authority to refuse to reissue the license.

This argument of the appellee is contrary to the plain wording of section 35–4–3(A) and (B) that "[t]he Board is to have full power, authority and control over the * * sale * * * of intoxicating liquors" and shall issue, reissue, revoke, transfer and suspend licenses "as the Board deems in the best interests of the public." It is our view of the law that the Board had the discretionary power to refuse to reissue the license in this case regardless of whether the appellee had been convicted of a liquor law violation or had even been accused of such a violation, provided the evidence showed that it would not have been in the best interests of the public to reissue the license.[13] So, the trial court erred in holding that because there was no proof of conviction of a liquor law violation in this case, the Board had to reissue the license.

12. The first paragraph of section 35–4–20, ACLA Cum.Supp.1959 [AS 04.15.100(a)] states: "A violation of any of the provisions of this Act [relating to the licensure and regulation of the intoxicating liquor industry] shall be deemed a misdemeanor, and upon conviction thereof shall be punished by imprisonment of not more than one year, or by a fine of not less than Fifty Dollars ($50.00) nor more than Five Hundred Dollars ($500.00), each violation to be considered a separate offense."

13. See Cornell v. Reilly, 127 Cal.App.2d 178, 273 P.2d 572, 577–578 (1954).

This brings us to the final issue which must be decided on this appeal: Did the Board abuse its discretion in refusing to reissue the appellee's license?

The appellee contends that the attorney general did not carry the burden of proof of establishing the affirmative of his accusation that the girls named in the statement of issues were not bona fide entertainers. It this connection it is noted that the lower court was of the opinion "that the hearing officer ducked his responsibility in not finding specifically as to whether the girls involved were or were not bonafide entertainers." We disagree with both propositions.

First of all, it matters not whether the girls were bona fide entertainers. The mischief aimed at in the B-girl statute and branded as illegal is the employment by the licensee of female persons in a beverage dispensary, on a compensatory basis, *for the direct or principal purpose of soliciting sales of intoxicants to patrons of the licensed premises.*

Secondly, the hearing officer found that the appellee employed three female persons, "on a compensatory basis, for the purpose of soliciting, enticing and encouraging patrons to purchase alcoholic beverages sold on the said premises" and that such employment for the purposes mentioned was in violation of chapter 80, SLA 1959. From the findings thus made, he then concluded that the appellee's application to have the license renewed should be denied. Though not expressed in so many words, the hearing officer's findings can fairly be taken to mean that he did not deem it to be in the best interests of the public to reissue the license, since the licensee had employed female persons for the principal purpose of soliciting sales of intoxicants to patrons of the licensed premises.

These findings and the decision of the hearing officer are supported by substantial evidence. Jack Malcolm admitted that the girl entertainers solicited the purchase of drinks from the customers, who were for the most part single or unescorted men, and received a monetary commission on each sale. During six and one-half hours of their eight-hour shift the girls had nothing to do but sit around and talk with the customers or solicit the sale of drinks. While the girls were required to remain on the premises through nine hours of each night that they worked, ostensibly to prevent any suggestion that they were leaving the establishment to do something immoral, Malcolm admitted that they were given an incentive to increase their take-home pay by using the time not required for their dance numbers in the solicitation of drinks. That neither the licensee nor the girl entertainers treated this phase of their employment as just a do-as-you-please sideline is borne out by the fact that the girls concentrated on the sale of the more expensive drinks. Furthermore, the appellee furnished the girls with the privacy and intimacy of the "Blue Room" to hold out as a special inducement to the customer to buy his drinks by the $20 or $40 bottle of champagne. Occasionally the girls became too inebriated from drinking with the customers to be able to perform their dance or too sick to report for work. Malcolm himself summed up the evil of the business when he testified: "They [the girls] were frequently sick and that sort of stuff. It is a real tough business for girls to be in."

Having found that the Board, acting through the hearing officer, had authority to exercise its discretion in the matter of reissuance of the license in this case and finding no abuse of that discretion by the Board, we conclude that the superior court erred in holding that the Board exceeded its authority in refusing to renew the license of Malcolm, Inc., d/b/a Guys & Dolls.

The order of the superior court that the Board reissue and renew the appellee's license is reversed and set aside and the cause is remanded to the lower court with directions to enter judgment affirming the decision of the Board.

Reversed and remanded.