ABBOTT ESTRIN, Appellant,

*v.*

W. F. Moss, Commissioner of Agriculture
of Tennessee, Appellee.

430 S.W.2d 345.

(*Nashville,* December Term, 1967.)

Opinion filed June 26, 1968.

Petition for Rehearing Denied July 25, 1968.

Ben West, Nashville, for appellant.

George F. McCanless, Attorney General, and Paul Jennings, Assistant Attorney General, Nashville, for appellee.

Mr. Justice Chattin delivered the opinion of the Court.

This is an appeal from a decree of the Chancery Court upholding the constitutionality of Chapter 14 and Chapter 53 of the Public Acts of Tennessee, 1955 and 1961, respectively, codified as T.C.A. Chapter 6 of Title 43, Sections 609-618, inclusive. We affirm the Chancellor.

We will refer to the parties as they appeared in the trial court. Complainant, Abbott Estrin, is President of the Abbott Exterminating Company, a Tennessee corporation. The Company is engaged in the business of pest

control and services customers in this and neighboring states. Pest control operators are regulated by the provisions of T.C.A. Sections 43-609—43-618, inclusive.

Defendant, W. F. Moss, Commissioner of Agriculture, is authorized and required to promulgate rules and regulations for the enforcement of the law.

T.C.A. Section 43-610 establishes a pest control licensing board.

T.C.A. Section 43-613 provides:

"Every licensed pest control operator shall enter into a written contract with the person, firm, or corporation employing him to prevent, control, or eradicate termites and a separate contract must be given for each structure or building except that an industrial complex or group of buildings may be covered by a single contract when they are integral parts of one industrial unit, and a garage, pump house, or other outbuilding commonly a part of a residential establishment may be covered by the same contract as that covering the residence itself provided such garages, etc., are not used as separate residential units. In the case of pretreatment of new structures the contracts or warranties required by the federal housing administration, the veterans administration, or other federal agency, shall be construed to be contracts and deemed sufficient to satisfy the requirements of this section. Each licensed pest control operator shall be required to report each month's business to the department of agriculture within fifteen (15) days of the end of each calendar month. At the time the licensed pest control operator files his report of the previous month's business he shall be required to file with the commis-

sioner of agriculture a copy of all contracts for termite service issued during the period covered by the report and shall pay to the department of agriculture an operation fee of three dollars ($3.00) for each contract so reported. If any licensed pest control operator shall fail, neglect, or refuse to file the monthly report required above, by or before the specified date, such operator shall be required to pay a penalty of five dollars ($5.00) and an additional penalty for contracts that are not filed by the specified date in the amount of ten per cent (10%) of the operation fees required by this section for such contracts.''

T.C.A. Section 43-614 provides, in part:

''Any license may be suspended by the commissioner of agriculture after a hearing for any of the following causes:

\* \* \* \* \* \*

''(4) If the license holder shall fail to make the registrations and/or reports required in sec. 43-611 and 43-613 or shall fail to pay the fees required therein.''

In January of 1967, complainant received a letter from the Commissioner. This letter was entitled: ''Notice of intention to revoke license.'' The letter stated the grounds for revocation were, ''failure to file with the Commissioner of Agriculture a copy of the contracts for termite service which are listed below and with failure to pay the Department of Agriculture an operation fee of $3.00 on each of the below listed contracts.'' A list of several hundred unreported contracts followed.

The letter set forth the provisions of the statute under which revocation was being instituted and complainant's right to a hearing, if requested.

Complainant received another letter from the Commissioner in February, 1967, which charged complainant with further similar violations as the first letter and listed several hundred new contracts unreported.

These letters were filed as exhibits to complainant's bill filed on March 8, 1967, which sought to restrain further action by the Commissioner on the ground T.C.A. Sections 43-609 through 43-618 were unconstitutional. The letters and a copy of "Rules and Regulations Governing Pest Control Operators," (Tennessee Department of Agriculture) are the only exhibits in the record.

Complainant insists Chapter 6 of Title 43 T.C.A. violates the equal protection clause of the Fourteenth Amendment to the Constitution of the United States and Sections 8 of Articles 1 and 11 of the Constitution of Tennessee as an unlawful classification of the pest control industry and an unconstitutional exercise of the police power of the legislature of this State.

■ If the legislation is for the beneficial interest of the public health, then it constitutes a reasonable exercise of police power, and is exclusively for the determination of the legislature and not subject to judicial review. *Tennessee Board of Dispensing Opticians v. Eyear Corp.*, 218 Tenn. 60, 400 S.W.2d 734 (1966).

■ The power of the legislature to regulate business is a valid exercise of the police power of the State.

"The legislature of the State cannot prohibit an ordinary business but it may, * * * regulate the business

to promote the health, safety, morals or general welfare of the public.'' *Ford Motor Company v. Pace,* 206 Tenn. 559, 335 S.W.2d 360 (1960).

''This police power of the legislature embraces all matters reasonably deemed necessary or expedient for the safety, health, morals, comfort, domestic peace, private happiness, and welfare of the people.'' *McKesson & Robbins, Inc. v. Government Employees Department Store, Inc.,* 211 Tenn. 494, 365 S.W.2d 890 (1963).

''Legislation affecting alike all persons pursuing the same business under the same conditions is not class legislation.'' 16 Am.Jur. (2d), Constitutional Law, Section 517, page 904.

■ It does not matter how many or how few persons are included in the classification. *White Stores, Inc. v. Atkins,* 202 Tenn. 180, 303 S.W.2d 720 (1957).

■ The sole test of the constitutionality of any particular classification is that it must be reasonable; that is, made upon a reasonable basis. *Kelley v. Byington,* 185 Tenn. 421, 206 S.W.2d 409 (1947).

''The later decisions of this Court and of the Federal Supreme Court have conceded to the legislature a very wide range of discretion in the matter of classification in police statutes and revenue statutes. The idea is that, if any possible reason can be conceived to justify the classification, it will be upheld.'' *Ogilvie v. Hailey,* 141 Tenn. 392, 210 S.W. 645 (1918).

■ The reasonableness of any particular classification depends upon the particular facts of the case.

"There is no general rule by which to distinguish reasonable and lawful from unreasonable and arbitrary classification, the question being a practical one, dependent on experience and varying with the facts in each case." *Dilworth v. State,* 204 Tenn. 522, 322 S.W. 2d 219 (1959).

The Chapter of T.C.A. under attack provides for the regulation of persons or other entities engaged in the business of controlling pest and plant diseases. Under Section 43-609: "Any person, firm or corporation who shall for compensation, give advice or engage in work, for the control or eradication of insect pests, plant diseases, pest animals, wood destroying organisms, or who shall solicit such work in any manner, shall first have secured a license from the State Department of Agriculture. Any person desiring such a license shall make written application to the State Department of Agriculture, stating the kind of work for which the license is desired. The person who is to be in charge of the applicant's pest control operation shall then be examined by a pest control licensing board hereinafter provided for." And, "When the pest control licensing board shall have certified to the Department of Agriculture that an applicant is qualified for a license, the Commissioner of Agriculture or his authorized representative shall designate said person as a qualified operator, and shall issue to the applicant a license * * *." Each applicant must pay a registration fee and furnish a fidelity bond, before engaging in such business.

By the provisions of Section 43-613, "every licensed pest control operator," who is employed, "to prevent, control or eradicate termites," must enter into separate written contracts with each customer for whom he

performs any service relating to termite control or eradication. A copy of each contract must be filed with the Department of Agriculture and a fee of $3.00 paid for each contract. All pest control operators, whether in the termite business or not, are required to file monthly reports, and where an operator is engaged in the termite service, he must report the contracts and pay the fees each month.

Complainant insists Section 43-613 is unconstitutional because the Section singles out termite exterminators and requires them to make and file written contracts, and pay a $3.00 fee. It is argued this constitutes an unlawful and unconstitutional classification. The argument is it is constitutionally unfair to treat termite exterminators any differently than the whole of the pest control industry.

■ The burden of showing the classification does not rest upon a reasonable basis is upon complainant. *Darnell v. Shapard,* 156 Tenn. 544, 3 S.W.2d 661 (1928) ; *Terrell v. State,* 210 Tenn. 632, 361 S.W.2d 489 (1962). If any possible reason can be conceived to justify the classification, or if the reasonableness be fairly debatable, this Court must uphold it. *Phillips v. State,* 202 Tenn. 402, 304 S.W.2d 614 (1956).

Complainant insists there are no reasons for imposing the extra statutory burdens of Section 43-613 on termite exterminators, and the requirements of Section 43-613 are not substantially related to public health, safety, or welfare. In support of his contention, he cites *Livesay v. Tennessee Board of Examiners in Watchmaking,* 204 Tenn. 500, 322 S.W.2d 209 (1949), in which this Court held the occupation of watchmaking could not be regulated under the police powers of the State since it did

not involve the public health, safety or welfare. Obviously, this case is not in point.

Exhibit "C" to the complainant's bill is a copy of the "Rules and Regulations Governing Pest Control Operators." There regulations, issued by the Department of Agriculture pursuant to Section 43-615, include a detailed schedule of required methods of termite treatment and extermination. The treatment involves the application of highly toxic poisons to private residential as well as commercial buildings. Section 43-615 specifically authorizes the Department of Agriculture to set certain minimum standards of service and to regulate enforcement of its provisions. The regulations further provide for periodic inspections by the Commissioner or his agents for the purpose of determining whether licensed operators are maintaining the minimum standards. Where the services of an operator are substandard, Section 43-614 provides for suspension or revocation of the license.

When the Sections under attack and the regulations are read, we think it clear the legislature has required the business of termite extermination be regulated in order to protect the health, safety and welfare of the citizens of this State. We do not think the business of watchmaking, as considered in the Livesay case, is analogous to the business of termite eradication.

Further, we do not think it arbitrary or unreasonable to place the business of termite extermination into a single class for the purpose of regulation. No licensed pest control operator has been singled out or discriminated against. All persons, or other entities, engaged in the business of termite extermination must follow the same regulations.

■ Complainant insists no reason is given in the body of the statute for classifying the business of termite extermination in Section 43-613, and urges that this failure to give a reason renders it unconstitutional. We see no merit in this argument.

■ The question of whether the business of termite eradication should be regulated to the extent indicated by this Section is a question of public policy, public policy being the present concept of the public welfare or general good. *Ford Motor Company v. Pace,* supra. This Court has nothing to do with questions of policy. *Nashville, Chattanooga & St. Louis Railway v. Marshall County,* 161 Tenn. 236, 30 S.W.2d 268 (1930). These are considerations solely for the legislature. *Motlow v. State,* 125 Tenn. 547, 145 S.W. 177 (1911); *Davidson County v. Rogers,* 184 Tenn. 327, 198 S.W.2d 812 (1947).

■ We are of the opinion it is unnecessary the legislature spell out in the body of a particular Act its reasons for adopting one particular policy or another. "The Courts cannot require the legislature to specify its reasons for a classification." 16 Am.Jur.2d Section 496, page 865.

Complainant also argues that Section 43-613 unjustly discriminates against the smaller businesses engaged in termite extermination since it requires a fee of $3.00 for each contract regardless of the size of the contract, whether the contract covers a single house or a large commercial complex. Complainant insists this requirement results in inequality.

■ A classification is not unconstitutional merely because in practice it results in some inequality, where the

classification has a reasonable basis. *Cosmopolitan Life Insurance Company v. Northington,* 201 Tenn. 541, 300 S.W.2d 911 (1957).

So long as the regulation applies equally and consistently to all persons in the same class under similar facts and circumstances, the inequality or differential in the total amount of fees paid is not unconstitutional.

It is next insisted by complainant that Sections 43-609 and 43-613 are so vague, indefinite and ambiguous as to violate the constitutional guarantees of due process.

In considering this question, we do so keeping in mind the basic presumption in favor of the constitutionality of the legislative enactment. *Corn v. Fort,* 170 Tenn. 377, 95 S.W.2d 620, 106 A.L.R. 647 (1936).

"For the purpose of determining the constitutionality of a statute, it is the function of the court, first to ascertain its meaning by the application of ordinary canons of construction, and then to decide whether, as thus construed, the enactment is within the scope of the legislative power."

"It is not the form of a statute or the words that are used, but the object intended and the result reasonably effected by their use, that must control the determination." *Peay v. Nolan,* 157 Tenn. 222, 7 S.W.2d 815, 60 A.L.R. 408 (1928).

It is insisted Section 43-609 is unclear as to who must be licensed; that is, the corporation or an officer or employee thereof or both.

Complainant further argues because of the ambiguity existing in Section 43-609; Section 43-613, regarding the filing of contracts and payment of fees, becomes

ambiguous to the extent it would not be an unreasonable construction to require both an employee and the corporation to pay fees.

Finally, complainant asserts the ambiguity of Sections 43-609 and 43-613 render Sections 43-614 and 43-617 ambiguous to such an extent they are unenforceable.

Admittedly, at first glance Section 43-609 is somewhat confusing, and difficult to read. The sentences are long and involved in complicated syntax, such terms as "applicant," "person," "qualified operator," and "licensee," are not defined. However, a second reading of the statute reveals its meaning, especially when read in conjunction with the "Rules and Regulations."

▮ It is a familiar rule of statutory construction, where a statute is of doubtful meaning and subject to construction, that administrative interpretations, especially where they are unchallenged over a long period of time, are accorded persuasive weight by the court and will usually be followed unless palpably erroneous. *Gallagher v. Butler*, 214 Tenn. 129, 378 S.W.2d 161 (1963).

From reading the "Rules and Regulations" which were formulated and approved in February of 1961, we find definitions of terms and a full explanation of the application and licensing procedures. These regulations in no way contradict or go beyond the express limitations of Section 43-609 and tend to clarify the confusion which is occasioned by the awkward wording of the Section.

Complainant argues, however, we should not consider the administrative interpretation of the statute, because the rules of statutory construction and administrative interpretation have no relevancy to the constitutionality of the statute. We do not agree.

■ The constitutionality of a statute is not determined by its wording or form, but by the object intended and the result effected. *Peay v. Nolan,* supra.

■ It is only when the wording of a statute is "so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application," that the statute is unconstitutional. *Connally v. General Construction Company,* 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1925). Section 43-609 is not so vague or ambiguous that we must guess or differ as to its meaning.

The Sections under attack, when read in their entirety, clearly indicate a person, after examination and certification by the licensing board, becomes a qualified operator. It is also clear a person, firm or corporation must hold a license to do business and this license is issued after an employee or principal obtains a qualified operator's license. This is the construction of the Department of Agriculture. Moreover, this interpretation was evidently understood by complainant. The record reveals licenses were issued to Estrin as a qualified operator and Abbott Exterminating Company to do business in the pest control field in 1959.

It is clear a person must make application and take an examination to qualify for a license as a qualified operator. Obviously, a corporation cannot take an examination.

Section 43-613 plainly states a licensed pest control operator, "shall be required to file with the Commissioner of Agriculture a copy of all contracts for termite service issued during the period covered by the report and shall pay to the department of agriculture an operation fee of three dollars ($3.00) for each contract so reported." We

see no ambiguity in this language. It is clear only one copy of each contract is required to be filed and one fee paid for each contract.

The entity, the qualified operator and employees of the entity each are not required to file copies of contracts and pay the fees. This is a reasonable construction of the Section and the construction complainant has been required to follow. There has not been any attempt by defendant to require dual filings of contracts or the payment of more than one fee for each contract. Complainant, therefore, has no standing to attack the constitutionality of the Section.

"We will not pass on the constitutionality of a statute, or any part of one, unless it is absolutely necessary for the determination of the case and of the present rights of the parties to the litigation." *Phillips v. West,* 187 Tenn. 57, 213 S.W.2d 3 (1948); *West v. Carr,* 212 Tenn. 367, 370 S.W.2d 469 (1963).

Section 43-614 is not ambiguous in itself. Nor is it rendered ambiguous by Sections 43-609 and 43-613. The Section clearly states, "any license," may be suspended or revoked after a hearing. Any other interpretation would emasculate the effectiveness of the Section.

With respect to Section 43-617, this Section provides any person, firm or corporation who shall violate any provisions of the Chapter shall be deemed guilty of a misdemeanor and if found guilty thereof shall be required to pay a stated fine. Complainant has not been charged under this Section. Complainant, therefore, has no standing to assert the unconstitutionality of the Section. *Phillips v. West,* supra; *West v. Carr,* supra.

Complainant contends empowering the Commissioner and the Department of Agriculture to promulgate rules and regulations constitutes an unconstitutional delegation of legislative power.

 The legislature may create laws which delegate to administrative bodies the power to promulgate rules and regulations to carry out the laws. *Gamble v. State,* 206 Tenn. 376, 333 S.W.2d 816 (1960); *Tasco Developing & Bldg. Corporation v. Long,* 212 Tenn. 96, 368 S.W.2d 65 (1963).

Complainant insists Section 43-614 is unconstitutional on the ground that it permits him to be deprived of his license without due process of law.

█ It is true his license constitutes a property right. *State Board of Medical Examiners v. Friedman,* 150 Tenn. 152, 263 S.W. 75 (1923). Of course, a property right may not be revoked without due process of law.

█ Complainant argues four basic reasons for finding the Section in violation of due process: no hearing is required for the suspension of a license; any person who receives notice of suspension or revocation of his license must apply in writing to the Commissioner in order to obtain a hearing; the burden of proof is placed on the recipient of a "notice of intention to revoke license"; and that the Commissioner before whom the hearing must be held acts both as judge and prosecutor, thus he is not fair and impartial as required by due process.

The Section reads that, "any license may be suspended by the Commissioner of Agriculture after a hearing," for various enumerated causes. Complainant alleges violation of due process is based on the following part of the statutes:

"A license shall automatically be suspended should the qualified operator, whose name appears on the license, cease to be in charge of the license holder's pest control operations. * * *"

It is insisted this procedure constitutes a violation of due process, because it fails to provide for a hearing.

We find no merit in this argument for several reasons. In the next paragraph of the same Section, the legislature has specifically provided that any person receiving a notice of suspension of a license may appeal for a hearing by making application to the Commissioner. Furthermore, a one hundred twenty day grace period is allowed before a license is automatically suspended, during which time the licensee may obtain or qualify another of his personnel as a "qualified operator."

The Section further provides:

"Any person, firm, or corporation receiving a notice of suspension of a license or notice of intention to revoke a license, who desires to appeal for a hearing before the Commissioner of Agriculture, must file an application in writing requesting a hearing before the Commissioner."

Complainant argues since he is required to make application for a hearing such requirement places an unconstitutional burden on him. Complainant cites no authority to support his contention, and we have been unable to find any such authority. In fact, our review of the case law of administrative procedure reveals an application to the administrative agency for a hearing is a customary procedure. We do not see how it might result in a denial of due process.

■ Section 43-614 provides for adequate notice of the hearing, subpoena of witnesses, representation of all parties by Counsel, preparation of a court record of the proceedings, review of the Commissioner's ruling by certiorari to the Circuit Court, and appeal to the Supreme Court where any party dissatisfied may have a re-examination of the whole matter of law and facts appearing in the record. We think these provisions constitute due process of law insofar as the rights of complainant to a fair and impartial hearing are concerned.

■ The law is clear that no particular form of procedure is required to constitute due process in administrative hearings. *Louisville Gas and Electric Company v. F. P. C.,* 6 Cir., 129 F.2d 126 (1942), certiorari denied 318 U.S. 761, 63 S.Ct. 559, 87 L.Ed. 1133; *N. L. R. R. B. v. Prettyman,* 6 Cir., 117 F.2d 786 (1941).

"Statutory proceedings affecting property rights, which, by later resort to the courts, secure to adverse parties an opportunity to be heard, suitable to the occasion, do not deny due process." *Anderson National Bank v. Luckett,* 321 U.S. 233, 64 S.Ct. 599, 88 L.Ed. 692, 151 A.L.R. 824 (1943).

The Section does not operate to shift the burden of proof to complainant at a hearing before the Commissioner, as argued by complainant. The Section is silent as to which party has the burden of proof.

"It is generally held that the proper allocation of the burden of proof is among the essential rules of evidence which must be observed in adjudications by administrative agencies. As in court proceedings the burden of proof, apart from statute, is on the party

asserting the affirmative of an issue before an administrative tribunal." 1 Am.Jur.2d, Administrative Law, Section 391.

■ In cases involving the revocation or refusal to renew a license, the burden of proof is generally on the State or administrative agency which asserts in favor of revocation. *Walker v. City of San Gabriel,* 20 Cal.2d 879, 129 P.2d 349, 142 A.L.R. 1383 (1942); *Philadelphia Company v. Securities and Exchange Commission,* 84 App.D.C. 73, 175 F.2d 808 (1949); *Alaska Alcoholic Beverage Control Board v. Malcolm, Inc.,* 391 P.2d 441 (1964).

■ We are of the opinion Section 43-614 does not shift the burden of proof to a licensee at a hearing before the Commissioner.

■ We see no merit in the argument the Commissioner would be biased or prejudiced at any hearing of complainant's case, simply because the Commissioner instituted an investigation of complainant's business and authorized a notice of suspension or revocation to be mailed.

■ It cannot be assumed that the Act will be administered otherwise than in full compliance with the State and Federal Constitutions. *Seawell v Beeler,* 199 Tenn. 438, 287 S.W.2d 54 (1956).

■ The fact an administrative board is authorized to make a preliminary investigation and then file charges and also adjudge the controversy at the hearing is not a denial of due process. *Smith v. State Board of Accountancy of Ky.,* 271 S.W.2d 875 (Ky.1954).

"The case law, both federal and state, generally rejects the idea that the combination with judging or prosecuting or investigating functions is a denial of due process, although a few exceptions can be found." 2 Davis, Administrative Law, Section 13.02.

It results all assignments of error are overruled and the decree of the Chancellor is affirmed. Complainant will pay the costs.

BURNETT, CHIEF JUSTICE, and DYER, CRESON and HUMPHREYS, JUSTICES, concur.

### On Petition to Rehear

Appellant has filed a petition to rehear in which he requests this Court to clarify our original opinion to show the "Notice of Intent to Revoke License," referred to in the opinion, related solely to termite control and not to other activities covered by his license.

This matter was not considered and adjudged by the Chancellor.

"This Court will not grant relief which was not sought in the trial court, and sought for the first time on a petition to rehear in this Court." *Lawler v. McCanless,* 220 Tenn. 342, 417 S.W.2d 548 (1967).

The petition is denied at the cost of petitioner.