Tennessee Board of Dispensing Opticians

*v.*

Eyear Corporation et al.

400 S.W.2d 734.

(*Knoxville,* September Term, 1965.)

Opinion filed March 9, 1966.

Ray Siener, Chattanooga, Brown, Siener & Walker, Chattanooga, of counsel, for appellant Eyear Corp.

George F. McCanless, Attorney General, Thomas E. Fox, Assistant Attorney General, Gullett, Steele & Sanford and W. Harold Bigham, Nashville, for appellee.

Mr. Chief Justice Burnett delivered the opinion of the Court.

The original bill in this cause was filed by the Tennessee Board of Dispensing Opticians against the Eyear Corporation, a Tennessee corporation with its principal office and place of business in Chattanooga, Tennessee. The purpose of this bill was to enjoin the Eyear Corporation from committing certain acts without being licensed by the Tennessee Board of Dispensing Opticians, and for the commission of certain acts prohibited by the

Act creating this Board without being licensed by said Board.

The Board is composed of five individuals appointed by the Governor of the State of Tennessee, all of whom are named in the original bill. The bill alleges that said Board is charged with the duty and responsibility of examining and licensing dispensing opticians in Tennessee; that it has the duty under the Act creating said Board to promulgate rules and regulations governing the examination of applicants desiring to be licensed as dispensing opticians, establishing a code of ethics and standards of practice for dispensing opticians in this State, and generally to police and regulate the business of dispensing opticians. The bill likewise alleges the Board had authority under the Act to obtain injunctions to prohibit and restrain violations of the provisions of the Act.

The Act creating the Board was passed by the General Assembly in 1955 and is Chapter 98 of the Public Acts of that year. This Act has now been codified as sec. 63-1401, et seq., T.C.A. Supplement.

The bill charges that the Eyear Corporation through an employee accepts prescriptions of optometrists and ophthalmologists for corrective eye glasses, sends the prescription to out of state optical houses, along with frames which the Eyear Corporation previously sold to the customer, where the lens are ground and prepared and installed in the frames. The frames with the lens installed are then returned to the Eyear Corporation and dispensed to the patient or customer. This practice is alleged to be a violation of the Act in question, which prohibits any person from practicing as a dispensing optician without having been duly licensed to practice

this profession. The bill also alleges that if the Eyear Corporation had been properly licensed under this Act it was committing violations of the Act as set forth in the bill. The bill cites and files as exhibits thereto many examples of expensive advertising by the Eyear Corporation which it is alleged are violations of the Act. The bill makes specific and particular complaint of certain newspaper advertisements in which the Eyear Corporation stated that, "Any doctor's RX honored". It is likewise alleged in the bill that the Eyear Corporation is holding itself out as having the capability to filling doctor's prescriptions for glasses or optical lenses and that this constitutes practice of opticianry within the meaning of the Act.

The bill was answered admitting certain allegations but denying that these practices violated the Act. The Eyear Corporation likewise filed a motion to dismiss as well as a demurrer, both of which were overruled by the Chancellor. On the hearing of the cause the court below granted the motion to strike a number of the portions of the Eyear Corporation's answer upon the basis that the portions sought to be stricken were utterly irrelevant and immaterial to any issues to be decided in the case.

The Board cited and read to the Chancellor certain admissions contained in the sworn answer of the Eyear Corporation and it was upon these admissions, along with a stipulation, that the Chancellor decided the lawsuit. These admissions contained in the answer were:

"The defendant, Eyear Corporation, admits that it is a Tennessee corporation having its principal place of business at 400 Central Avenue, Chattanooga, Hamilton County, Tennessee, that it is a retail resident

merchant in a permanently located place of business selling merchandise and therefore has no need of a dispensing optician's license. * * *

"The defendant, Eyear Corporation, admits that it advertises that any doctors RX is honored. * * * The defendant, Eyear Corporation, further admits that some of its customers bring their RX with them and after they select frames from displays, the frames and RX are sent to highly reputable competent and recognized out of state optical house or laboratory for preparation, * * *."

After these admissions were specifically relied upon by the Board the defendant moved to dismiss the cause for failure of proof. This motion was overruled by the court and the court concluded "that the Dispensing Opticians Act, T.C.A. sec. 63-1401, et seq., is constitutional and that the admissions of the defendant, Eyear Corporaton, contained in its sworn answer, to-wit, that 'it advertises that any doctor's Rx is honored' and 'that some of its customers bring their Rx with them and after they select frames from displays the frames and Rx are sent to highly reputable, competent and recognized out of state optical houses and laboratories for preparation' amount to a confession or admission that the defendant, Eyear Corporation, is and has been violating the Dispensing Opticians Act, T.C.A. sec. 63-1401, et seq., in that it has prepared, adapted and dispensed lenses, spectacles, eyeglasses, and optical devices to the intended user thereof on the written prescription of a physician or optometrist without obtaining a license as required by said Act, * * *." The Chancellor then granted the injunction and this appeal followed.

The assignments of error are: (1) The court erred in overruling the defendant's motion to dismiss at the end of complainant's proof for its failure to make out a prima facie case. (2) The court erred in holding that Chapter 98 of the Public Acts of the Tennessee General Assembly of 1955 is a valid constitutional amendment. (3) The court erred in striking portions of the defendant's answer concerning the legality of the composition of the Board and that there are three corporations known as the Tennessee Association of Dispensing Opticians, and by striking out that portion of the defendant's answer setting out that the complainant would have the court interpret the Dispensing Optician's Act in derogation to the trade practice rules of the Federal Trade Commission.

The principal argument on behalf of the Eyear Corporation is that it is required that it adapt and dispense lenses before there is any violation of the Act. In other words, sec. 2 of the Act, now codified as sec. 63-1402, provides in part in the definition of practice that, "The practice of dispensing opticians is defined as the preparation, adaptation and dispensing of lenses, spectacles, eye glasses, and optical devices to the intended user thereof on the written prescription of a physician or optometrist, duly licensed to practice his profession." It is argued that when the Eyear Corporation takes the doctor's prescription for these glasses and sends them to an out of state corporation to be ground and fitted there is no showing that these glasses were then dispensed by the Eyear Corporation to the person who brought them the prescription; and that before there could be a violation of this definition of the Act it is necessary that the person or corporation violating the Act commit all three

of these functions, that is, "preparation, adaptation and dispensing".

■■ As a basis for this argument there is attached to the answer of the Eyear Corporation a letter from the Assistant Attorney General written to a member of the Board in 1963 wherein in answer to certain questions of the Board to the Attorney General, it is said that it is necessary to have these three things present before there can be a violation of the Act. It is not shown that there was any reliance by the Eyear Corporation upon this in its action, and that it followed this letter of the Assistant Attorney General. The letter insofar as it can be construed suggested that these three things are required as a prerequisite in finding a violation of the Dispensing Act. It does not now reflect the opinion of the Attorney General. In this letter it is readily seen that it is based upon certain hypothetical questions posed, and it is not the same by a long shot to the facts as presented in this case. There are no facts shown herein that the Eyear Corporation was warranted in relying upon this letter. This argument is based upon the theory that the State is estopped now from taking a different position from that assumed in the letter of the Assistant Attorney General. The doctrine of estoppel cannot be invoked against the State. *Murfreesboro Bank & Trust Co. v. Evans*, 193 Tenn. 34, 241 S.W.2d 862. It is denied that this interpretation given in this letter is now the Attorney General's interpretation, nor has it been the consistent interpretation of the statute by the State. Where a consistent interpretation has been given such should be given persuasive weight by this Court, but where it is not given for a long period of time and relied upon this Court is not bound by the opinion of the Attorney General therein. See

authorities in *Murfreesboro Bank & Trust Co. v. Evans,* supra.

■■ The contention of the Board is that the word "and" should be interpreted "or" where it is obvious that the Legislature in enacting the statute had this in mind, and it is clearly shown that this was their intent. A number of cases are cited in briefs so holding, such as *Interstate Life & Accident Ins. Co. v. Gann,* 196 Tenn. 422, 268 S.W.2d 336, 44 A.L.R.2d 1230, and others. A very able discussion of such an interchange in the words "and" and "or" is discussed in Sutherland on Statutory Construction, 3rd Ed., Vol. 2, at sec. 4923. Of course, it is our duty to construe what is meant in the definition of practice here and whether or not these three words are to be taken in their separate and distinct meanings, or if it is necessary to have all three of them together, or whether when they are read together just what it means when one is charged with a violation or of not complying with the licensing act. The purpose of the Legislature in defining this Act was to make a guide line for the Board to follow in granting a license and to try to prohibit one from violating the Act. If it were necessary to arrive at this intention that the disjunctive participle "or" and the conjunction "and" should be ready convertibly then the court does not hesitate to do so. We think though that in the construction of this phrase here, "preparation, adaptation and dispensing", it is not necessary to substitute one of these words for the other. Clearly, the word "preparation" here "means the act of preparing or fitting for some use or purpose; the operation of making ready for a specific end; disposition; adaptation." New Standard Dictionary. In other words, the Legislature was defining this as committing one or all of these acts

together where they got back into the layman's hands and all of this was done by the individual or corporation who did it so that the untrained or unlicensed person who did it would be violating this Act because it might injure the health, and in this instance the eyes, of the individual.

When a company without a license and without the proper preparation takes a doctor's prescription and grinds these lenses and gives them lack to the individual there is done here what the Legislature was holding against. In other words, there is the preparation, the adaptation and the dispensing in the sense that where it comes to a court on facts like this there is a violation of this definition. It seems to us it was the clear intent of the Legislature in passing said Act that if any one of these elements, preparation, adaptation, and/or dispensing, was brought about by one not qualified to do these different things, then there was a violation of this Act. When we read the statute in any other way it certainly would be to impute to the Legislature a lack of comprehension as to the mechanics of correcting the evils honestly sought to be guarded against. Each of these elements is a vital and important step in the process of placing lenses, spectacles, eye glasses and optical devices in the hands of the intended user. If a person or corporation has to engage in all three of these elements before he can be charged with violating the Act or is required to have a license to act under the Act, the Act would be meaningless because it could be circumvented very simply by the expediency of having A. do the preparation, B. do the adaptation, and C. do the dispensing. All of these hypothetical individuals could be employees of a corpora-

tion and none of them would be required to be licensed under this Act.

■ The eyes of the average individual are probably one of the most delicate organs of the individual. It certainly was the purpose of the Legislature in passing this Act to require trained and licensed individuals to do these things so as to protect in every way the eyes of the individual. The Legislature clearly felt, and it was their intention, in enacting this Act that such an Act had a direct and real connection with the health and welfare of the general public, and the purpose of the Act was to protect such health and welfare.

The portions of the answer to this bill as relied upon admit that the services rendered by the Eyear Corporation include holding itself out as capable of filling a doctor's prescription. It is further admitted that these precriptions were received, framed and sold to the customer, and that the prescriptions were sent with the frames to out of state optical houses for the grinding of the lens and installation in the frames. This then obviously follows necessarily, and nothing else can follow, that when these come back from these out of state firms (of course, they couldn't be licensed when they are out of the state) they must be in some manner delivered to the individual who buys them. Such an individual must have some assurance that the lens are properly installed in the frames before they are finally delivered to him and that they meet the prescriptions and that the frames are properly fitted to his face. If this were not true anyone could circumvent the entire purpose of this Act. What would be the use of having such an Act if such could be done?

■ It seems to us that without question what is admitted and conceded by this answer is that there was a preparation, adaptation, and clearly a dispensing must follow under these admitted and conceded facts. These spectacles were made and eventually must get into the hands of the person who brought the prescription there. If this corporation was not the dispensing party there would be no purpose of its running these many ads and acting in this way, because it was clearly a corporation for profit and not an eleemosynary institution.

Subsection (g) of T.C.A. sec. 63-1404 provides:

"Revocation or suspension of license.—It shall be unlawful for a dispensing optician to * * *.

"(g) Advertise by the use of handbills, circulars, posters, window displays, neon signs, radio, television or newspaper."

■ As said above the bill charges that the Eyear Corporation has no dispensing optician's license and goes on further to charge that even though it has no license it violated the last above quoted section of the Act applying to the rules and regulations, etc., of the Board. The argument is made that this is repugnant to the proposition, that it is asking for suspension of the license, and says at the same time that it doesn't have a license. Of course, such an argument is not good because the purpose of the bill is to show that the Eyear Corporation is violating the provisions of this Act, and even though it had no license, if it violated the provisions of the Act, then to try to keep the profession in order an injunction would issue regardless of whether it had a license or did not. In other words, the injunction issues to keep them from violating the Act and when it is shown that there is a

certain provision of the Act they are violating this would in itself be a reason why an injunction should issue. The factual situation here as shown by these various ads, some of them photographs and which were attached as exhibits to the bill, show beyond question that the Eyear Corporation is violating this provision of the Act. This alone and in itself would be a very sound reason why the Chancellor properly used his discretion in granting the injunction.

We next come to the constitutionality of the Dispensing Opticians Act. It is argued that this statute might deny some citizens their inherent right to earn a livelihood in a private field of work thus depriving them of a valuable property right without due process of law under the Tennessee Constitution, Article I, Section 8; Article 11, Section 8; and under Amendment 14 of the United States Constitution. The argument along this line is that being a dispensing optician is not a profession, and such opticians are not and cannot be truly subject to the provisions of the Healing Arts Act, T.C.A. sec. 63-102, and other similar acts which cover basic sciences, such as dentists, nurses, etc. In other words, it is argued that the Dispensing Opticians Act shows absolute inconsistency and cannot be harmonized with those other acts for obvious reasons that these acts do not undertake to ''diagnose, treat, operate on,'' etc., and it is said that the dispensing optician is not a profession because there is no school for it or course of study and things of the kind to make it a profession.

It seems to us that the Act in question represents a valid regulation by the General Assembly of this State of a business or calling affecting the public interest and having a direct relationship to public health and welfare,

and, when the Legislature thus elects to pass an Act for this purpose to regulate the practice of dispensing opticians, it is clearly a reasonable and salutary act. The Sections of our Constitution and of the United States Constitution that are relied upon are so closely alined that they are almost identical. The question under this contention is whether the Legislature, under its police power, may constitutionally regulate the conduct of preparing lenses, etc., for the betterment of the eyes. When the Legislature in its wisdom has seen fit to enact legislation of this type the courts have consistently felt that under our Consitution and under the Federal Constitution this was a matter for the Legislature and one that we as a court should not, unless the Constitution is violated, encroach upon.

 Here the Legislature has before it facts and things known to it and has enacted legislation that is apparently for the protection of the public safety, public health or public morals. The Court in its wisdom should not encroach upon this Act or the right of the Legislature. Our only purpose in such matters is to determine whether or not there is plausible reason for the enactment of such legislation. It is true that the Court at all times reserves the right to pass upon the constitutionality of a statute, but in doing so we do not inquire into the policy of the Legislature, that is, the factual background of why it acted as it did, if there is a plausible reason back of such legislation. See many cases cited and relied upon in *State ex rel. Loser v. National Optical Stores Co.,* 189 Tenn. 433, 225 S.W.2d 263. It is not at all unreasonable for us to believe that the Legislature had the purpose in mind in enacting this legislation of the protection of the public health, to-wit, the eyes of individuals. Having thus deter-

mined that the legislation is reasonable certainly under these sections of our Constitution and that of the United States Constitution the Act is not unconstitutional.

■ When one assails, or questions, the right of the Legislature to so enact an Act the burden of showing that it does not rest upon a reasonable basis and that it is essentially arbitrary and unreasonable is upon the person attacking the regulation. *Lamb v. Whitaker,* 171 Tenn. 485, 105 S.W.2d 105.

The Legislature has the right to enact such an Act and if there are any facts which reasonably can be conceived which sustain it, it is our duty to sustain it. See *Peay v. Nolan,* 157 Tenn. 222, 7 S.W.2d 815, 60 A.L.R. 408, and particularly pages 233 and 234 of our State Report.

Such cases as *Livesay v. Tenn. Bd. of Examiners in Watchmaking,* 204 Tenn. 500, 322 S.W.2d 209, are cited in argument that this Act is unconstitutional. It will be remembered that the Livesay case concerned an Act regulating the business of watchmaking, and where the Legislature seeks to regulate a business or profession that has no connection with public health, morals, comfort or welfare of the people, it is not subject to regulation by the application of the State's police power. This Act though regulating such things as are necessary for the eyes including the adaptation, preparation, and dispensing of glasses, special lenses, etc., leaves no question in our mind but that they are for the public health. Again we must say if the legislation is for the beneficial interest of the public health, as is this, this then is a reasonable exercise of police power and is exclusively for the determination of the Legislature and not subject to

judicial review. *State ex rel. Loser v. National Optical Stores Co.,* supra, and others. By the enactment of this statute the General Assembly has obviously found that persons who prepare, adapt and dispense eye glasses, spectacles and the like should be regulated and controlled by a license and that any method of advertisement which they use is not conducive to maintaining desirable standards and is a reason for revocation of the license. We agree with such a conclusion even though this conclusion of the Legislature is not subject to judicial review.

It is shown in a footnote under T.C.A. sec. 63-1401 that a number of states have adopted similar legislation to this Act governing dispensing opticians. We have made some independent investigation of the statutes of some of these states and reported decisions thereon and find that without exception they have been upheld. The Board cites particularly the case of *Commonwealth v. Ferris,* 305 Mass. 233, 25 N.E.2d 378, which, though not exactly in point with the questions here raised, is very persuasive and along the same line of thought that we have reached after studying this record before preparing our opinion.

■ It is argued very forcibly that the Chancellor erred in striking certain portions of the appellant's answer. Particularly, it is argued that the Chancellor's action in striking these portions of the answer dealing with the alleged existence of three active Tennessee corporations known as the Tennessee Association of Dispensing Opticians, and portions dealing with the practice rules of the Federal Trade Commission are erroneous. We do not think so. Assuming that these portions of the answer should not have been stricken and the material contained therein proved, this would not in any way aid the Eyear Corporation's case. It must be

remembered that here the allegations concern the violation of this very salutory Act for the benefit, help and aid of the most, or at least one of the most valuable possessions any individual has, that is, his eye sight, and when it is shown, regardless of other acts, that things are being done by the individual which might, or do, injure them, clearly the Chancellor acted correctly in striking these particular immaterial allegations to the point involved in this lawsuit, that is, the protection of the human eye.

■ It was stipulated herein that the members of the Tennessee Board of Dispensing Opticians who are parties hereto have been duly appointed by the Governor. Regardless of this fact we under such legislation as here attacked would and must conclude that the Board was at least de facto with authority under this Act to bring this suit.

■ The argument and contention in regard to the practice rules of the Federal Trade Commission it seems to us are entirely immaterial and irrelevant to any issue involved in this proceeding which is the care of fixing material things to aid the vision. The Federal Trade Rules have to do with price fixing and the like and have nothing in the world to do with the questions here involved, consequently we see no possible error in the ruling of the Chancellor on this question.

■ For reasons stated, after a thorough study of the matter, we are absolutely convinced that the Chancellor was correct herein. There are some questions raised about interrogatories and things of the kind filed with this record, but which were not asked to be sent up by either party and as to the question of taxing costs as to these. In the first place, the Eyear Corporation appealed this

lawsuit and it was up to them to see that the record was properly made up and perfected to get this appeal. If any of these things are in this record improperly it is their responsibility and not the responsibility of the Board. Thus it is that any costs by reason of this fact as well as other costs should be adjudged against the Eyear Corporation along with making the injunction permanent herein.