**TENNESSEE BOARD OF DISPENSING OPTICIANS, Appellant,**

v.

**ROY H. PARK, BROADCASTING OF TEN-NESSEE, INC., et al., Appellees.**

Court of Appeals of Tennessee,
Western Section.

Dec. 11, 1973.

Certiorari Denied by Supreme Court
July 15, 1974.

John B. Hagler, Jr., Asst. Atty. Gen., Nashville, for appellant.

L. Hale Hamilton, Chattanooga, for appellees, Times Printing Co. and WDEF Television Station.

Joseph F. DiRisio, Chattanooga, for appellee, Eyear Optical, Inc.

W. Ferber Tracy, Chattanooga, and John H. Hicks, Atlanta, Ga., for appellee, Optical Center of Rossville, Inc.

NEARN, Judge.

This is a suit brought in the Chancery Court of Hamilton County by the Tennessee Board of Dispensing Opticians against; (1) Roy H. Park Broadcasting of Tennessee, Inc., owners of WDEF Television Station in Chattanooga; (2) Times Printing Company, which publishes The Chattanooga Times newspaper; (3) Optical Center of Rossville, Inc., a Georgia corporation and (4) Eyear Optical, Inc., a Georgia corporation. The suit was brought to enjoin the Optical Center of Rossville, Inc. and Eyear Optical, Inc. from advertising over Tennessee based media and to also enjoin The Chattanooga Times and WDEF Television Station from carrying advertisements of dispensing opticians.

Service of process was had upon the Georgia defendants by means of T.C.A. § 20–235.

The complaint charges all the defendants with violation of T.C.A. § 63–1404(g).

By appropriate pleadings the Georgia corporations (a) deny that provisions of T.C.A. § 20–235 are applicable to them and therefore, they are not properly before the Court and (b) deny that provisions of T.C.A. § 63–1401 et seq. are applicable to them as they are not dispensing opticians within the purview of the statute. The news media also deny that they are within the purview of the statute.

The facts of the case, which were stipulated by the parties, were that:

A. The Optical Center of Rossville, Inc. and Eyear Optical, Inc. entered into contracts which resulted in commercials for optical products being carried by WDEF Television Station which station was said to have had a substantial number of viewers in both Tennessee and Georgia.

B. The Optical Center of Rossville, Inc. entered into contracts which resulted in newspaper advertisements for optical products being carried in The Chattanooga Times which was said to have had a substantial number of readers and subscribers in both Tennessee and Georgia.

C. That there was no evidence as to where the contracts were made.

D. That the Optical Center of Rossville, Inc. and Eyear Optical, Inc. were in full compliance with the Georgia law but if they were operating in Tennessee as a Tennessee corporation they would be subject to the provision of T.C.A. § 63–1401 et seq.

The Chancellor found that T.C.A. § 63–1401 et seq. was limited in its application to dispensing opticians operating within the State of Tennessee and that defendant foreign corporations were not subject to service of process under the Tennessee Long Arm Statute. He further held that the statutes were not applicable to the news media. Therefore, he dismissed the complaint.

The plaintiff Board has appealed this decision alleging three Assignments of Error which are, the Court erred in holding that: (1) The Chattanooga Times and WDEF–TV were not subject to the prohibitions of T.C.A. § 63–1401 et seq., (2) the advertising of optical goods via Tennessee media by Georgia corporations does not afford a basis of jurisdiction under T.C.A. § 20–235 for purposes of enjoining the Georgia corporations from illegally advertising and (3) assuming a jurisdictional basis exists, Georgia corporations cannot be enjoined from advertising optical goods in Tennessee media because said corporations are not subject to the provisions of T.C.A. § 63–1401 et seq.

The alleged errors will not be treated in this Opinion *seriatim.*

T.C.A. § 63–1401 authorizes the Board to "establish a code of ethics and standards of practice *for dispensing opticians in Tennessee . . .".*

T.C.A. § 63–1404 authorizes the Board to suspend "or to revoke any certificate to practice as a *dispensing optician in the state of Tennessee . . . "* for violation of certain rules including (g), [To] "advertise by the use of handbills, circulars, posters, window displays, neon signs, radio, television or newspaper."

T.C.A. § 63–1410 in the first paragraph provides for suspension or revocation of the license of dispensing opticians for violation of the provisions of the Chapter. The second paragraph empowers the Board to seek injunctive relief in the proper Court for continued violations.

■ It is evident that the purpose of the statute is to regulate the activities of

those engaged within this State in the business of dispensing opticals. Appellate Courts, on occasions, have been criticized for using such words as "evident" when interpreting statutes. Legal wags have been known to say such words are a substitute for logical reasoning. However, we think the word "evident" is here appropriate for we do not know how, or under what authority, the Tennessee Board could regulate the activities of citizens of Georgia in that State or citizens of any other state except this one. As to citizens of this State its application is to "dispensing opticians" and the Chapter does not either directly or inferentially attempt to regulate the activities of news media of this State. The business end of its regulatory rifle is aimed squarely at dispensing opticians dispensing opticals in this State and none other.

From the stipulations filed in this cause it must be logically concluded that neither of the Georgia corporations are dispensing any opticals within this State.

■■■ The issue of whether or not the Georgia defendants are properly before the Court, by virtue of this Long Arm Statute T.C.A. § 20–235, is intellectually challenging, but whether or not they are properly before the Court need not be answered, for in either event, we hold that the provisions of Chapter 98 of Public Acts of 1955 are applicable to only those persons dispensing opticals in the State of Tennessee. The Georgia corporations are not persons dispensing opticals in the State of Tennessee. The news media defendants are not dispensing opticals in this State or any other and they are therefore, not included in any authority granted the Board. The Board has no jurisdiction or authority in fact over the Georgia corporations.

We therefore hold that the Board has exceeded the authority given it under the

said Chapter by seeking injunctive relief. In this instance it was without authority to do so. The original complaint must fail. All Assignments of Error are overruled and the Chancellor is affirmed.

Costs of the appeal are adjudged against the appellant.

CARNEY, P. J., concurs.

MATHERNE, Judge (dissenting).

This appeal presents three basic issues: (1) Are the defendant out of state corporate dispensing opticians, which regularly advertise over news media located in Tennessee, subject to service of process from a Tennessee court under the provisions of T.C.A. § 20–235, at the suit of a state board seeking to enforce its regulatory powers; (2) Does Chapter 98, Acts 1955 (T.C.A. §§ 63–1401 through 1410) governing dispensing opticians authorize a Tennessee court, at the suit of the board therein created, to enjoin a dispensing optician in the State of Georgia from advertising by the use of Tennessee based news media; and (3) Is the Tennessee based news media subject to the same injunction, even though it is not a dispensing optician? This dissent is based upon the proposition that each of the three issues must be answered in the affirmative.

The Chancellor held the out of state defendant corporations not subject to process from his court under the facts as presented. The majority opinion pretermits this issue because the two other issues above noted were answered in the negative, and it was deemed unnecessary to rule on the jurisdiction of the court. The jurisdiction of the court involves an interpretation and application of T.C.A. § 20–235,[1] to the facts at bar.

1. T.C.A. § 20–235. *Jurisdiction of persons unavailable to personal service in state— Classes of actions to which applicable.*—Persons who are nonresidents of Tennessee and residents of Tennessee who are outside the state and cannot be personally served with

It is established law that by this enactment the legislature intended to give to Tennessee citizens the benefit of the full jurisdiction allowable consistent with the due process clause of the Fourteenth Amendment. Darby v. Superior Supply Co. (1970) 224 Tenn. 540, 458 S.W.2d 423; Kroger Co. v. Dornbos, 408 F.2d 813 (6 Cir. 1969); Southern Machine Co. v. Mohasco Industries, Inc., 401 F.2d 374 (6 Cir. 1968).

The defendants argue it is not shown where the contract for advertising was made; it is not shown the defendants were ever in Tennessee; and the lawsuit does not involve the rights of a Tennessee citizen as against an out of state defendant. The out of state defendant corporations admit they would be subject to the statute governing dispensing opticians if they in fact did operate in Tennessee.

In International Shoe Company v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), a Delaware corporation had salesmen operating in the State of Washington. The unemployment compensation commissioner of the State of Washington brought suit against the Delaware corporation for unemployment compensation tax claimed to be due on the commissions paid by the Delaware corporation to those salesmen. Notice of assessment of the tax was personally served upon one of the corporation's salesmen in the State of Washington, and a copy of the notice was mailed by registered mail to the Delaware

corporation at its St. Louis, Missouri address. The Delaware corporation appeared specially and challenged the service of process as in violation of the due process clause of the Fourteenth Amendment. The Court found the Delaware corporation had no office in the State of Washington, and made no contracts for sales or purchases in that State. The Delaware corporation did not maintain a stock of goods in Washington, and no deliveries of goods were made in intrastate commerce. The salesmen were residents of the State of Washington, and they had no authority to enter into contracts or to make collections. The salesmen took orders for goods which orders were mailed to the corporation's out of state office for acceptance. On the issue of the due process clause the Court stated:

"Historically the jurisdiction of courts to render judgment in personam is grounded on their de facto power over the defendant's person. Hence his presence within the territorial jurisdiction of a court was prerequisite to its rendition of a judgment personally binding him. (citations) But now that the capias ad respondendum has given way to personal service of summons or other form of notice, due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not of-

process within the state are subject to the jurisdiction of the courts of this state as to any action of claim for relief arising from:
  (a) The transaction of any business within the state;
  (b) Any tortious act or omission within this state;
  (c) The ownership or possession of any interest in property located within this state;
  (d) Entering into any contract of insurance, indemnity, or guaranty covering any person, property, or risk located within this state at the time of contracting;
  (e) Entering into a contract for services to be rendered or for materials to be furnished in this state.

  (f) Any basis not inconsistent with the constitution of this state or of the United States.
  "Person" as used herein shall include corporations and all other entities which would be subject to service or process if present in this state. Any such persons shall be deemed to have submitted to the jurisdiction of this state who acts in the manner above described through an agent or personal representative. [Acts 1965, ch. 67, § 1; 1972 (Adj.S.), ch. 689, § 1.]

fend 'traditional notions of fair play and substantial justice.'

\*    \*    \*    \*    \*    \*

"It is evident that the criteria by which we mark the boundary line between those activities which justify the subjection of a corporation to suit, and those which do not, cannot be simply mechanical or quantitative. The test is not merely, as has sometimes been suggested, whether the activity, which the corporation has seen fit to procure-through its agents in another state, is a little more or a little less. (citations) Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. That clause does not contemplate that a state may make binding a judgment in personam against an individual or corporate defendant with which the state has no contacts, ties, or relations. (citations)

"But to the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state. The exercise of that privilege may give rise to obligations; and, so far as those obligations arise out of or are connected with the activities within the state, a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue."

The Court concluded the enforcement of the unemployment compensation tax by the State of Washington against the Delaware corporation did not violate the due process clause of the Fourteenth Amendment.

It would appear in the present lawsuit the out of state corporate defendants should be even more amenable to jurisdiction, because the plaintiff Board insists their acts of advertising in Tennessee is strictly prohibited by Tennessee statute. There is no question but that the out of

state corporations entered into "a contract for services to be rendered * * * in this state" [T.C.A. § 20–235(e)], namely, the carrying of its advertisements by the resident news media. There is no question but that the relief sought by the plaintiff Board is an effort to enforce the statutes of Tennessee which the Board claims to be violated by that advertising. All the "contacts, ties and relations" are with the State of Tennessee; the State of Georgia has absolutely no interest in the matter. There should be no argument but that the defendant Georgia corporations have such contacts with the State of Tennessee that the present lawsuit does not offend "traditional notions of fair play and substantial justice." For the reasons stated, this Court should hold the defendant out of state corporate dispensing opticians subject to the jurisdiction of the courts of the State of Tennessee.

The majority opinion finds that neither of the Georgia corporations are dispensing opticals in the State of Tennessee, and therefore these nonresident corporations cannot be found guilty of violating T.C.A. § 63–1404(g), which prohibits advertising by dispensing opticians. This conclusion is based upon a finding by the majority that "It is evident that the purpose of the statute is to regulate the activities of those *engaged within this State* in the business of dispensing opticals." (Emphasis added) That conclusion, which permits any dispensing optician in the nation to advertise in Tennessee via Tennessee based media so long as that party is not a Tennessee dispensing optician, should give cause for serious reflection. The question must be determined in the light of the intent of the legislature by its passage of T.C.A. § 63–1404(g), which is the same thing referred to by the majority as "the purpose of the statute."

It is important to note the case of Tennessee Board of Dispensing Opticians v. Eyear Corporation (1966), 218 Tenn. 60, 400 S.W.2d 734, wherein T.C.A. § 63–1404(g) was held not violative of the due

process clauses of the Constitution of the State of Tennessee, and of the Fourteenth Amendment to the United States Constitution. That case also determined the legislative intent in the enactment of the statute, wherein Mr. Chief Justice Burnett wrote for the Court as follows:

"Here the Legislature has before it facts and things known to it and has enacted legislation that is apparently for the protection of the public safety, public health or public morals. The Court in its wisdom should not encroach upon this Act or the right of the Legislature. Our only purpose in such matters is to determine whether or not there is plausible reason for the enactment of such legislation. It is true that the Court at all times reserves the right to pass upon the constitutionality of a statute, but in doing so we do not inquire into the policy of the Legislature, that is, the factual background of why it acted as it did, if there is a plausible reason back of such legislation. See many cases cited and relied upon in State ex rel. Loser v. National Optical Stores Co., 189 Tenn. 433, 225 S.W.2d 263. It is not at all unreasonable for us to believe that the Legislature had the purpose in mind in enacting this legislation of the protection of the public health, to wit, the eyes of individuals. Having thus determined that the legislation is reasonable certainly under these sections of our Constitution and that of the United States Constitution the Act is not unconstitutional."

Accepting as settled that the legislative intent was to protect the public health, safety and welfare, it defies reason for a court to rule that the Legislature intended advertising by a Tennessee dispensing optician is detrimental to the public good, whereas advertising by a Georgia dispensing optician via Tennessee based media is not. It therefore becomes obvious that the legislature intended to bar *any dispensing optician* from advertising in Tennessee via Tennessee based media. A limitation of the prohibition to Tennessee dispensing opticians would strip the Act of any meaning, and would totally defeat the legislative intent.

The words of a statute are not to be construed so as to obtain a meaning or interpretation which will defeat what the legislature intended by its enactment thereof. Of course the Legislature of Tennessee has no control over Georgia dispensing opticians in the State of Georgia; but, if those out of state dispensing opticians are permitted by court decision to advertise in Tennessee via Tennessee based media the legislative intent to protect the people of the State of Tennessee from the harmful effects of such advertising will be thwarted by judicial decree. The legislature, in the lawful exercise of its police power, prohibited the advertising as being harmful to the public good; the courts have no authority to rule otherwise. *Eyear Corp.* case, supra. The courts have the duty to apply the statute so as to effect that legislative intent.

For the foregoing reasons, this Court should rule the statute [T.C.A. § 63–1404(g)] applicable to the two Georgia corporate dispensing opticians when they advertise in Tennessee via Tennessee based media.

Lastly, the majority holds the resident defendant television station and newspaper are not subject to injunction because they are not dispensing opticians, and the Act is clearly limited to the regulation of dispensing opticians. This question was considered in the case of New Mexico Board of Examiners in Optometry v. Roberts (1962), 70 N.M. 90, 370 P.2d 811, [affirmed in Head v. New Mexico Board of Examiners in Optometry, 374 U.S. 424, 83 S.Ct. 1759, 10 L.Ed.2d 983 (1963)]. The New Mexico case dealt with a Texas optometrist who was advertising the price of eyeglasses via a New Mexico newspaper

and two New Mexico radio stations. The Board sued the Texas optometrist and the New Mexico news media asking the court to enjoin the advertising as in violation of New Mexico statute. The Supreme Court of New Mexico in upholding an injunction granted by the trial court against the New Mexico news media, stated:

> "We conclude as did the trial court, enjoining the appellants (news media) from aiding and abetting a nonresident in the violation of a law of New Mexico is as essential to the administration of the provisions of our statutes relating to the practice of optometry for the health and welfare of our citizens as would be the prosecution of a resident optometrist for the same offense."

In this respect the Supreme Court of the United States in the *Head* case, supra, held the same New Mexico statute as applied to prevent New Mexico based media, serving an area much of which lies in Texas, from accepting or publishing price advertising by a Texas optometrist, does not impose a constitutionally prohibited burden on interstate commerce; and such prohibition of advertising by the New Mexico media does not deprive the media of property so as to violate the due process clause of the Fourteenth Amendment.

This Court should adopt the reasoning of the New Mexico Court in the *Roberts* case, supra, as relates to the power and duty of a Tennessee court to enjoin Tennessee news media from accepting and publishing advertising from the two Georgia corporate dispensing opticians in violation of the provisions of T.C.A. § 63–1404(g). This Court should hold the defendant television station and newspaper subject to the injunctive relief afforded by T.C.A. § 63–1410.

It results the decree of the Chancellor should be reversed, and a decree should be entered in this Court ordering the injunction as prayed against all defendants.

Respectfully submitted.