**KREE INSTITUTE OF ELECTROLYSIS INC., Appellant-Plaintiff,**

v.

**The STATE BOARD OF ELECTROLYSIS EXAMINERS et al., Appellees-Defendants.**

Supreme Court of Tennessee.

March 28, 1977.

Tyree B. Harris, IV., Harlan Dodson, Nashville, for appellant-plaintiff.

Frank J. Scanlon, Asst. Atty. Gen., Brooks McLemore Jr., Atty. Gen., Nashville, of counsel, for appellees-defendants.

## OPINION

HARBISON, Justice.

This declaratory judgment action challenges the constitutionality of the state

"Electrologists Practice Act" as enacted in 1974 and amended in 1976. T.C.A. §§ 62–2401 et seq. The Chancellor held the statute and regulations issued pursuant thereto free from any of the constitutional infirmities asserted by appellant, which then perfected its appeal to this Court.

Appellant is engaged in the manufacture of electrical machines and equipment used in the process of electrolysis, involving the removal of unwanted human hair. It also conducts a school for the training of persons to operate its machines and to engage in the practice of electrolysis, furnishing them with certificates of satisfactory completion of its courses of study and training. It also has a number of employees engaged in the practice in this and other states, usually in conjunction with the operations of beauty salons which are not owned and operated by appellant, but a part of whose facilities or quarters are utilized by the personnel of appellant.

The statute in question creates a State Board of Electrolysis Examiners, and provides for the licensure of persons engaged in the practice of electrology, defined as:

". . . the art and practice relating to the removal of hair from the normal skin of the body by the application of an electric current to the hair papilla by means of a needle or needles so as to cause growth inactivity of the hair papilla and thus permanently remove the hair." T.C.A. § 62–2402(a).

The process by which the removal of such hair is accomplished is referred to in the statute as "electrolysis".

The school of instruction conducted by appellant is located outside of Tennessee, and there is no contention that the statute and regulations in question directly govern the teaching or manufacturing operations of appellant. Its primary insistence is that electrology is not a practice or profession which requires such skill or training as to be within the police power of the State, but rather is an ordinary occupation or livelihood falling outside the scope of State licensure or regulation. Appellant relies primarily upon the case of *Livesay v. Tennes-*

*see Board of Examiners in Watchmaking,* 204 Tenn. 500, 322 S.W.2d 209 (1959).

Appellant's own proof, however, practically refutes this contention. The chief executive officer of appellant testified:

"Q. As respects the licensing per se, your school is not opposed to that, is it?

"A. No, sir, we are not. As a matter of fact, we are for it.

"Q. You are for it?

"A. Yes."

Appellant's evidence showed that the process of electrolysis requires the insertion of a needle into the human skin, and the sending of an electrical charge through the needle so as to destroy the hair papilla, preventing further growth and loosening the hair itself for its easy removal. This process was described in some detail by one of appellant's employees, who testified that she performed it under a strong light, with the aid of magnifying lenses, and that it was very exacting and tiring work. The operator is required to be skilled in the operation of the machine, and to have knowledge of certain human illnesses and allergies. She takes histories from the customers before performing the work upon them and sometimes consults with their physicians. A dermatologist testified for the Board, and stated that he sometimes referred patients to electrologists, and that it was exacting work which he seldom undertook to perform himself.

The record fails to establish appellant's claim that the regulation of this practice is beyond the police power of the State to enact legislation for the safety and health of its citizens. In the case of *Estrin v. Moss,* 221 Tenn. 657, 430 S.W.2d 345 (1967), the Court found little analogy between the *Livesay* case, *supra,* involving watchmaking, and a statute regulating the business of termite eradication. We find even less analogy to the practice of electrology, and believe the case to be governed by the principles stated in *Tennessee Board of Dispensing Opticians v. Eyear Corporation,* 218 Tenn. 60, 400 S.W.2d 734 (1966):

"It seems to us that the Act in question represents a valid regulation by the General Assembly of this State of a business or calling affecting the public interest and having a direct relationship to public health and welfare, and, when the Legislature thus elects to pass an Act for this purpose to regulate the practice of dispensing opticians, it is clearly a reasonable and salutary act." 218 Tenn. at 74–75, 400 S.W.2d at 741.

It is argued on behalf of appellant that electrology is merely a phase or branch of the practice of cosmetology, and that is is usually practiced in connection with the operation of a hairdressing or beauty salon. It is therefore contended that the regulation of electrologists should be placed under the State Board of Cosmetology. *See* T.C.A. § 62–401 et seq.

This, of course, is a matter of judgment and is one which addresses itself to the General Assembly, not to this Court. An examination of the definitions of the two fields of endeavor, and of the training which the General Assembly deems necessary for licensure, makes it readily apparent that they involve different skills and types of preparation.

Appellant further contends that even if the practice of electrology is subject to state licensure and regulation, certain provisions of the existing statutes and regulations are arbitrary and unreasonable.

One of appellant's principal attacks is upon T.C.A. § 62–2403, the terms of which are also carried forward into regulations adopted by the Board, as follows:

"Practitioners shall limit their practice solely to that of electrology with no other business allowed on the premises."

Appellant offered testimony that most of its employees operate through the facilities of a beauty parlor, but always in separate, private quarters. Indeed all of the witnesses who testified in the case stated that the practice should be carried out in strict privacy, not only for the benefit of the patient, but because of the exacting and tedious nature of the work required of the opera-

tor. It is either done in a separate room in a beauty salon; or, according to the record, if operators engage in the practice in their private homes, it is usually carried on in a separate and private part of the residence. None of appellant's employees are permitted to do anything except electrolysis, and they do not engage in hairstyling or any other beauticians' work.

This testimony, again, supports the reasonableness of the statutory requirements of exclusivity of occupation and of facilities. This does not necessarily mean that the existing practice described by appellant's employee, of utilizing private quarters within a beauty parlor, is a violation of the statute. Certainly there is no evidence that it has been so interpreted by the Board, or that the Board has any intention of giving any restrictive construction to the statute. All of the employees of appellant who were operating in Tennessee at the time the Act took effect were "grandfathered", and no one of them has had her license revoked or any other action taken against her because her operations have continued to be within a beauty salon, using a receptionist employed by the salon for the purpose of making appointments.

On their face, we certainly cannot say that the provisions of T.C.A. § 62–2403 are invalid, and there is no evidence in the record to indicate that they have been given any unreasonable construction or application. If such a case should arise, and a proper evidentiary showing made, the matter could be inquired into further.

Appellant's final insistence is that the required course of study for licensure is unreasonable and unconstitutionally discriminatory. The statute requires that to be eligible for certification, an applicant must be at least eighteen years of age, of good moral character, and a high school graduate. She must have completed the undergraduate course of study prescribed by the State Board for the Healing Arts, and the Advisory Board of the Tennessee Medical Association. In addition, the applicant must have completed a course in practical training in electrolysis in a school of

electrology, which school shall include at least 450 hours of clinical experience and 150 hours of lectures on insertion techniques, modalities and regrowth problems and office management. In the alternative, however, the applicant must have completed a like number of hours in the subject area specified in an apprenticeship program approved by the Board. Finally the applicant must show freedom from any infectious disease and must pay the statutory fees. T.C.A. § 62–2407.

Many of these statutory requirements are also requirements of appellant for graduation from its training school. It requires the graduate to be at least eighteen years of age, of good moral character, a high school graduate and in possession of both good eyesight and good general health. Appellant only requires 120 hours of instruction, including 75 hours of practical training and the remainder in the study of theory. The executive officer of appellant, however, admitted that there is, to his knowledge, at least one school of electrology in another state which requires some 1100 hours of study. In both his opinion and that of his employee, study in excess of 120 hours would not appreciably increase the efficiency of the operator of one of appellant's machines. This testimony falls far short of establishing that others may not reasonably be of a different opinion and certainly fails to demonstrate the arbitrariness or unreasonableness of the educational requirements set out in the Tennessee statute.

The State requires a course of study of 1200 hours over a period of not less than seven months in an accredited barber school or college, plus the passage of an examination, in order for an individual even to be licensed as an apprentice barber, and requires an additional apprenticeship period of twelve months, and an additional examination, in order for him to be licensed as a master barber. *See* T.C.A. § 62–310, 311.[1] Certainly we cannot hold as a matter of law that the requirement of one-half of these hours of training for an electrologist is discriminatory or unreasonable. Appellant's witness testified that the Tennessee requirement would involve an apprenticeship training program of some three months which, again, is less than one-half of that required for an apprentice barber.

Appellant also complains of the college-level courses of study prescribed by the Board, but we are of the opinion that the proof fails to establish that these courses are unrelated or unnecessary to the practice of electrology to such a degree that we could strike them as being arbitrary or invalid, or as unreasonably preventing otherwise qualified persons from seeking entry into this regulated field of endeavor.

We have carefully considered all of the contentions of the appellant and find them to be without merit. The judgment of the Chancellor is in all respects affirmed, at the cost of appellant.

COOPER, C. J., and FONES, HENRY and BROCK, JJ., concur.

1. The statutes requiring licensure for barbers were upheld in *State ex rel Melton v. Nolan*, 161 Tenn. 293, 30 S.W.2d 601 (1930).