STATE of Tennessee, Plaintiff-Appellant,

v.

Joseph H. BLOCKMAN,
Defendant-Appellee.

Supreme Court of Tennessee.

May 4, 1981.

Francis J. Scanlon, Asst. Atty. Gen., William M. Leech, Jr., Atty. Gen., Nashville, for plaintiff-appellant.

N. Alan Lubin, Memphis, for defendant-appellee.

OPINION

HARBISON, Chief Justice.

In this cause the State appeals from the dismissal of an indictment charging appellee with practicing dentistry at a time when his license to practice had been revoked, in violation of T.C.A. § 63–558. This statute provides penalties for any violation of the laws governing the licensure of dentists and permits the imposition of a fine, a jail sentence or both. There are enhancement provisions for repeated violations. The statute was enacted in 1957.

In a separate chapter of Title 63 are statutes governing the licensure of physicians and surgeons. These provide for a separate board of examiners from that established for dentistry. They prescribe different courses of study and qualifications for licensure. In T.C.A. § 63–607 there are penalties for practicing medicine or surgery without first obtaining a license, including a fine, a jail sentence or both. A separate statute, T.C.A. § 63–621, makes it a misdemeanor for a person to practice medicine or surgery after having his license revoked. This statute, first enacted in 1919, provides only for a fine, not for a jail sentence.

The trial judge held the dentistry statute unconstitutional upon the ground that it provided a different criminal penalty for practicing dentistry upon a revoked license from that provided for physicians and surgeons so practicing. Although appellee asserted both violations of due process and equal protection of the laws, apparently the trial judge rested his decision primarily upon invidious class discrimination, or lack of equal protection.

Collected in T.C.A. Title 63 are general statutes providing for the "State Licensing Board for the Healing Arts," T.C.A. § 63–101, general statutes governing all branches

of the healing arts, and eighteen additional and separate chapters governing eighteen separate and distinct professions, all branches of the healing arts. Most of these statutes were passed separately, at different times and on entirely different occasions. They regulate such diverse and distinct branches of the healing arts as podiatrists, nursing home administrators and speech pathologists, as well as dentists and physicians.

All of the branches of the healing arts fall generally under the Board for the Healing Arts, and there are penal provisions, carrying a fine, a jail sentence, or both, for violations of the general statutes or for any of the specific statutes, unless otherwise provided by the General Assembly. See T.C.A. § 63–126. Thus, it is an oversimplification to conclude that a physician practicing upon a revoked license could never receive a jail sentence, as was apparently concluded by the trial judge. While T.C.A. § 63–621 provides only a fine for practicing medicine after revocation of license, T.C.A. § 63–126 provides for a jail sentence of up to eleven months twenty-nine days. This statute was enacted in 1947, twenty-eight years after the original statute governing physicians and surgeons.

In the case of *Reinhart v. State,* 193 Tenn. 15, 241 S.W.2d 854 (1951), a physician was convicted of practicing medicine without a license and also of practicing the healing arts without a license from the Healing Arts Board. The two indictments were tried together, and the defendant was convicted under both statutes. This Court did not find it necessary to rule upon the issue of whether there was an implied repeal of the earlier statutes by the subsequent enactment of T.C.A. § 63–126, because the state suggested that the conviction for practicing medicine without a license be vacated, leaving in effect only the conviction which carried both the fine and the jail sentence under T.C.A. § 63–126.

Therefore it seems to us that the underlying predicate for the decision of the trial court—that a physician could not receive a jail sentence for practicing upon a revoked license—is inaccurate and not based upon a proper analysis of the statutes.

All branches of the healing arts governed by Title 63 function under two separate and distinct boards—the Board for the Healing Arts and a separate examining and licensing board for each of the eighteen separate branches. The two boards have concurrent authority and enforcement powers in many instances. See T.C.A. § 63–122. Many of the separate licensing statutes, however, provide for separate revocation procedures and contain specific penalties, both civil and criminal, for violation of the licensure requirements.

Appellee has never contended that dentistry is not a separate and distinct profession from medicine. Licensure in the latter field covers and includes authority to practice in areas which would otherwise fall within the practice of dentistry. Dentists, however, are not permitted to practice medicine and hold a much more narrow and restricted license than physicians or surgeons. See T.C.A. §§ 63–537 to 538 and T.C.A. § 63–608.

Nor does appellee insist that the penal statute under which he was indicted invidiously discriminates among dentists themselves. He simply has undertaken to compare the penal provisions for practicing dentistry upon a revoked license with the penal sanctions governing several of the seventeen other branches of the healing arts and, finding that these are not identical, insists that there is a denial of equal protection.

This contention, in our opinion, is without merit. While both appellee and the trial court seem to question the wisdom and logic of the penal scheme established by the General Assembly, this is no basis for any court to declare unconstitutional different statutes governing different professions. There is simply no different treatment for members of the same class presented in this case. It could hardly be argued that podiatrists, chiropractors, optometrists, osteopaths, psychologists, veterinarians, physical therapists, dispensing opticians, nursing home administrators and speech pathologists are all members of the same class and

must receive identical treatment, either civilly or criminally, under the licensure laws, even though all are generally subject to the regulation and supervision of the Board for the Healing Arts. Yet this is essentially the contention of appellee in this case.

As stated by the Court many years ago:

"The power to define what shall constitute a criminal offense is committed to the discretion of the legislature, subject to constitutional limitations and safeguards, beyond which the courts do not let the legislature pass.

" 'The legislature in creating an offense may define it by a particular description of the act constituting it, or it may define it as any act which produces, or is reasonably calculated to produce a certain defined or described result; or it may group together various means by which the end may be accomplished and make any one of such means an offense when done to attain the object denounced by the statute.' " *Hall v. State*, 151 Tenn. 416, 418–19, 270 S.W. 84, 85 (1924).

Shortly after its enactment, the state Worker's Compensation Act was challenged on numerous grounds, among them being the exemption of certain occupations from its provisions. Responding to that contention, the Court said:

"It has been held by this court that when the classification made and stated in a statute is challenged, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed. It is also the rule that one who assails the classification contained in a statute has the burden of showing that it does not rest on any reasonable basis, but is essentially arbitrary." *Scott v. Nashville Bridge Co.*, 143 Tenn. 86, 108, 223 S.W. 844, 850 (1919).

The various statutes dealing with the healing arts are directly and closely connected with the health and welfare of the general public, and the purpose of the statutes is to protect such health and welfare. In this connection, the legislature has broad regulatory power. *See Tennessee Board of*

*Dispensing Opticians v. Eyear Corp.*, 218 Tenn. 60, 400 S.W.2d 734 (1966); *State ex rel. Carpenter v. Cox*, 61 Tenn.App. 101, 453 S.W.2d 69 (1969). We are aware of no requirement that all persons licensed in the various branches of the healing arts must be treated identically for all purposes, or that they constitute a single class as to which different and distinct civil or criminal sanctions may not be prescribed.

The statutes defining and regulating the practice of dentistry were held constitutional by this Court in the case of *Prosterman v. State Board of Dental Examiners*, 168 Tenn. 16, 73 S.W.2d 687 (1934). The statutes have been enforced on a number of occasions. In *Hooper v. State*, 206 Tenn. 489, 334 S.W.2d 730 (1960), the defendant was tried and convicted for practicing dentistry without a license. His attack upon the definition of the practice of dentistry was held to be without merit. In other cases civil sanctions, such as injunctions or criminal contempt citations, have been invoked. *Hooper v. State*, 205 Tenn. 134, 325 S.W.2d 565 (1959); *State Board of Dental Examiners v. Talley*, 185 Tenn. 83, 203 S.W.2d 364 (1947). In one case both the State Licensing Board for the Healing Arts and the State Board of Dental Examiners filed an action for an injunction to restrain an individual from the illegal practice of dentistry as a branch of the healing arts. The complaint was sustained and an injunction issued. *State Board of Dental Examiners v. Rymer*, 202 Tenn. 234, 303 S.W.2d 959 (1957).

Since dentistry is a separate, discrete and distinct profession and its classification as such is well settled, persons licensed therein are members of a class and must be treated alike in the absence of some reasonable basis for subcategories or subdivisions. They are not, however, members of the other classes or categories of licensed persons regulated and governed by the other chapters of Title 63. Therefore we find no basis for appellee's contention that he has been deprived of equal protection of the laws or of due process simply because the criminal sanctions prescribed for violation

of the particular licensing laws regulating him may differ in some respects from penalties provided for other professional groups.

The judgment of the trial court is reversed and the cause is remanded for trial. Costs incident to the appeal are taxed to appellee; all other costs will be assessed in the trial court.

FONES, COOPER, BROCK and DROWOTA, JJ., concur.